UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael A. HARRIS, Defendant–
Appellant.

No. 01–2027.

United States Court of Appeals,
Tenth Circuit.

Oct. 30, 2002.

Peter M. Ossorio, Office of the United States Attorney, Las Cruces, NM (Norman C. Bay and Michelle L. Wykoff, with

him on the brief), appearing for Plaintiff–Appellee.

Peter E. Edwards, Office of the Federal Public Defender, Las Cruces, NM (Stephen P. McCue and Shari Lynn Allison, with him on the briefs), appearing for Defendant–Appellant.

Before SEYMOUR and HOLLOWAY, Circuit Judges, and VANBEBBER, Senior District Judge.*

VANBEBBER, Senior District Judge.

On June 13, 2000, a jury in the United States District Court for the District of New Mexico convicted Defendant Appellant, Michael A. Harris, of possession with intent to distribute cocaine base within 1,000 feet of a school in violation of 21 U.S.C. § 860(a). Having previously been convicted of two felony violations relating to possession of a controlled substance, Defendant received the mandatory minimum sentence of life imprisonment to be followed by a ten-year period of supervised release. He now appeals, arguing that: (1) the district court should have suppressed the evidence of his possession of cocaine base on Fourth Amendment grounds; (2) his conviction was supported by insufficient evidence because the Government was not required to prove that he intended to distribute the cocaine base within 1,000 feet of a school; (3) the district court should have given a jury instruction on the lesser-included offense of simple possession; (4) 21 U.S.C. § 860 is unconstitutional; and (5) the district court should have required the Government to plead and prove his prior felony convictions beyond a reasonable doubt before using those convictions to enhance his sentence. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and AFFIRM.

## I. BACKGROUND

At approximately 2:45 p.m. on January 25, 2000, Felicia Madrid, an employee working at the Dairy Queen restaurant in Lordsburg, New Mexico, noticed the smell of marijuana wafting through the restaurant. When she looked outside and saw that two men were smoking directly outside the restaurant's drive-through window, she called the sheriff's department, reported the activity, and gave a description of the men and their location. A short while later, Ms. Madrid called back to the sheriff's department to report that the men were leaving their original location and were walking toward a nearby car wash. The two men that Ms. Madrid reported were the only men she saw in the restaurant's parking lot at that time.

Dason Allen, a Lordsburg Police Officer, received the initial dispatch reporting that two men wearing dark clothing were smoking narcotics in the Dairy Queen parking lot. Minutes later, Officer Allen received a second dispatch reporting that the two men were leaving the Dairy Queen parking lot and were walking toward a nearby car wash. At the time he received the second dispatch, Officer Allen saw two men fitting the description heading toward the car wash. Officer Allen did not see any other people in the vicinity at the time.

Officer Allen, who was dressed in his police uniform, parked his marked police car in the car wash and began walking toward the two men, one of whom was Defendant. When he was approximately six to eight feet from them, he asked for their identification. Both men ignored him and continued walking. When the gap between Officer Allen and the two men

---

* The Honorable G. Thomas VanBebber, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

closed to approximately two to three feet, Officer Allen again requested their identification, and, at that point, detected the strong odor of burnt marijuana emanating from Defendant. Both men ignored Officer Allen's second request for identification and walked past him. After passing Officer Allen, Defendant turned around and began walking backwards, facing Officer Allen, with both hands in the front pockets of his jeans. Noticing that Defendant was acting nervously, and fearing that he might be concealing a weapon, Officer Allen asked Defendant to remove his hands from his pockets. When Defendant refused, Officer Allen approached him, removed his hands from his pockets, and escorted him to the front part of the police car.

At the car, Officer Allen ordered Defendant to assume the protective frisk position: hands on the hood of the police car; feet two to three feet from the front of the car; and left and right feet separated. Although Defendant initially complied in full with Officer Allen's order, he refused to separate his left and right feet once Officer Allen started to conduct the protective frisk. Officer Allen forcibly separated Defendant's feet and began patting down Defendant's left leg. He soon felt a hard object, approximately three inches wide by four to five inches long, in the inner part of Defendant's left cowboy boot. Thinking that the object might be a gun, Officer Allen lifted up Defendant's pant leg and saw a tightly wrapped Saran Wrap package in the boot. Still unsure of what the object was, Officer Allen reached inside Defendant's boot to retrieve it. At that point, Defendant kicked Officer Allen in the shoulder and started to run. Officer Allen was left holding the Saran Wrap

package, which was later found to contain cocaine base, or "crack" cocaine.

With Officer Allen, Lordsburg Police Officer Michael Zamora, and New Mexico State Police Officer Miguel Anguiano now in pursuit, Defendant jumped over a fence onto a local elementary school's playground. While in pursuit, Officers Zamora and Anguiano both witnessed Defendant throw something over the playground fence. Officer Anguiano specifically saw Defendant reach into one of his boots, pull out a white substance that appeared to be wrapped in plastic or cellophane, and throw it over the fence. Shortly. thereafter, Officers Zamora and Anguiano apprehended Defendant on the playground. Officer Zamora returned to the area where he and Officer Anguiano had seen Defendant throw something and discovered lying on the ground a tightly wrapped Saran Wrap package similar to that seized earlier by Officer Allen. The package was later found to contain cocaine base. The total weight of cocaine in the two packages seized by Officers Allen and Zamora was approximately four ounces.

Agent Michelle Thomas of the Southwest New Mexico Task Force and Special Agent Paul Ramirez of the United States Drug Enforcement Administration both independently interviewed Defendant after he was arrested and taken into custody. Defendant waived his Miranda rights on both occasions and provided the following information. Defendant explained that an individual in Los Angeles, California had previously "fronted" him seven ounces of cocaine.[1] Although Defendant, who was evidently involved in a drug rehabilitation program, had not used cocaine for a long

---

1. Evidence introduced at trial indicated that an individual is "fronted" drugs when a dealer supplies drugs to the individual at a set price but does not require immediate payment. The individual then sells the drugs at whatever price he or she chooses, pays the dealer the set price, and keeps the remaining profits.

period of time, he used some of the seven ounces, and in an apparent bout of drug-induced paranoia, flushed the rest of the cocaine down the toilet. Since he owed approximately $6,000 for the fronted cocaine, Defendant decided that he would sell four ounces of "fake," or poor quality, cocaine base given to him for free by another Los Angeles acquaintance. Fearing that he would be killed in Los Angeles for selling the "fake" cocaine base, Defendant boarded a Greyhound bus to Mobile, Alabama to sell it there. The Greyhound bus on which Defendant was traveling was stopped in Lordsburg when the incidents detailed above occurred.

## II. DISCUSSION

### A. Motion to Suppress

On May 24, 2000, the district court held a hearing on Defendant's motion to suppress evidence of his possession of cocaine base on Fourth Amendment grounds. Defendant argued that: (1) Officer Allen did not have reasonable suspicion to initially stop Defendant; (2) Officer Allen did not have reasonable suspicion to justify the protective frisk of Defendant; and (3) the scope of Officer Allen's protective frisk exceeded permissible limits. After hearing testimony from Officer Allen, the district court denied Defendant's motion to suppress. Defendant, advancing the same arguments asserted at the hearing, contends that the district court's decision was in error. We disagree.

■■■■ "When reviewing a district court's denial of a motion to suppress evidence, we accept the district court's factual findings and determinations of witness credibility unless they are clearly erroneous." *United States v. Flores,* 48 F.3d 467, 468 (10th Cir.1995) (internal citations omitted). We are permitted to consider evidence introduced at the suppression hearing, as well as any evidence properly

presented at trial, *United States v. Rios,* 611 F.2d 1335, 1344 & n. 14 (10th Cir.1979) (citation omitted), and we view all of the evidence in the light most favorable to the ruling of the district court, *Flores,* 48 F.3d at 468. With that in mind, however, we review the ultimate question of reasonableness under the Fourth Amendment *de novo. Id.*

■■■ The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. It is well-established that:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative. The burden is on those seeking the exemption to show the need for it.

*Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (internal citations, quotations marks, and alterations omitted). Any evidence obtained as a result of an illegal search and seizure is subject to the exclusionary rule—i.e., the evidence cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *Mapp v. Ohio,* 367 U.S. 643, 656, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

■■■ In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court crafted a "stop-and-frisk" exception to the general rule that seizures and searches be supported by probable

cause. Under *Terry,* a law enforcement officer may stop a person without probable cause for arrest if the officer has a reasonable and articulable suspicion that the person might be involved in criminal activity. 392 U.S. at 21–22, 30, 88 S.Ct. 1868. If the officer has such reasonable and articulable suspicion, she may also conduct a protective frisk of the suspect's outer clothing if she reasonably believes that the suspect might be armed and presently dangerous. *Id.* at 27, 30, 88 S.Ct. 1868. However, "[t]he sole justification of the search ... is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Id.* at 29, 88 S.Ct. 1868. When evaluating the validity of a *Terry* stop, "the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

### 1. The Initial Stop

Defendant first argues that Officer Allen did not have reasonable and articulable suspicion to stop him. Our analysis begins with a determination of when Officer Allen stopped, or "seized," Defendant for Fourth Amendment purposes. The evidence introduced at the suppression hearing and at trial showed that Officer Allen approached Defendant and his acquaintance at the car wash, and from a distance of approximately six to eight feet, asked for their identification. Both men ignored Officer Allen and continued walking. When Officer Allen was within two to three feet of the men, he again asked for their identification, and they again ignored him and continued walking. When Defendant passed Officer Allen and turned around and began walking backwards with his hands in his pockets, Officer Allen ordered Defendant to remove his hands from his pockets. When Defendant refused, Officer Allen approached him, removed his hands from his pockets, and escorted him to the front part of his police car.

 While Defendant contends that Officer Allen effectively seized him when he began asking for his identification, the Government argues that Officer Allen did not seize Defendant until Officer Allen removed Defendant's hands from his pockets and escorted him to the police car. We agree with the Government. "A seizure does not occur simply because a police officer approaches an individual, asks questions, or requests identification." *United States v. Sanchez,* 89 F.3d 715, 718 (10th Cir.1996) (citing *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). A police officer seizes a person for purposes of the Fourth Amendment " 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *California v. Hodari D.,* 499 U.S. 621, 627–28, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)) (further citations omitted). Ultimately, a seizure requires either the use of physical force by the police officer or submission by the individual to the police officer's assertion of authority. *Id.* at 626, 111 S.Ct. 1547. A police officer's assertion of authority without submission by the individual does not constitute a seizure. *Bella v. Chamberlain,* 24 F.3d 1251, 1255 (10th Cir.1994) (citing *Hodari D.,* 499 U.S. at 626, 111 S.Ct. 1547) (further citations omitted) (holding that individual was not seized when law enforcement official fired gunshots at his helicopter because the gunshots did not cause him to submit to the assertion of authority or otherwise succeed in stopping him).

▮▮▮▮ In this case, Defendant ignored Officer Allen and continued walking both times that Officer Allen requested his identification. Therefore, even if Officer Allen's requests for identification could be construed as an "assertion of authority," Defendant did not submit to it. Accordingly, Defendant was not seized for purposes of the Fourth Amendment until Officer Allen implemented physical force by removing Defendant's hands from his pockets and escorting him to the police car.

Having determined the point at which Officer Allen seized Defendant, we now turn to whether Officer Allen had reasonable and articulable suspicion that Defendant might be involved in criminal activity prior to that seizure. The evidence introduced at the suppression hearing and at trial indicates that based on two telephone calls made by Dairy Queen employee Felicia Madrid to the sheriff's office, Officer Allen had information that two men wearing dark clothing had allegedly been smoking narcotics in the Dairy Queen parking lot and were heading toward the car wash. When he approached the area, Officer Allen saw two men wearing dark clothing walking toward the car wash. They were the only people that Officer Allen saw in the vicinity at the time. Officer Allen then approached the two men and twice requested their identification. As he requested their identification for the second time, Officer Allen smelled the odor of burnt marijuana emanating from Defendant. Shortly thereafter, Officer Allen seized Defendant.

To support his argument that Officer Allen lacked reasonable and articulable suspicion to stop him, Defendant relies primarily on the Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In *J.L.*, the police received a tip from an anonymous caller that a young black male wearing a plaid shirt was standing at a particular bus stop carrying a gun. 529 U.S. at 268, 120 S.Ct. 1375. The police went to the bus stop and saw three black males, one of whom, J.L., was wearing a plaid shirt. *Id.* Although the police had no other reason to suspect J.L. or his two acquaintances of illegal conduct, they stopped and frisked all three. *Id.* They discovered that J.L. was carrying a gun in his pocket. *Id.* The Court held that the anonymous tip alone did not provide the police with reasonable and articulable suspicion to stop J.L. under *Terry*. *Id.* at 271, 120 S.Ct. 1375. Citing its previous decisions in *Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) and *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Court explained that "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Id.* at 270, 120 S.Ct. 1375 (internal quotation marks omitted).

▮▮▮▮ Defendant likens Ms. Madrid's two calls to the sheriff's department in this case to the anonymous tipster's call in *J.L.*, and he urges us to find that Officer Allen had no reasonable suspicion to stop him on that basis. We believe that Defendant's reliance on *J.L.* misses the mark for two primary reasons. As an initial matter, the facts in this case are easily distinguishable from the facts in *J.L.* Unlike the caller in *J.L.*, Ms. Madrid was not anonymous; law enforcement officials had the opportunity to assess her credibility and hold her responsible if the tip was fabricated. As a result, we believe that the information provided by Ms. Madrid, coupled with the fact that Defendant and his acquaintance were the only people Officer Allen saw in the

vicinity of the car wash when he approached the area, provided Officer Allen with reasonable and articulable suspicion to stop Defendant. *See Adams,* 407 U.S. at 147, 92 S.Ct. 1921 (stating that reasonable and articulable suspicion of criminal activity can be based on information supplied by another person; it need not be based solely on the officer's personal observation). Moreover, we have previously determined that Defendant was not seized in this case until Officer Allen removed Defendant's hands from his pockets and escorted him to the police car. By that time, Officer Allen had already detected the strong odor of burnt marijuana emanating from Defendant. This fact also gave Officer Allen reasonable and articulable suspicion to stop Defendant. *See United States v. Ozbirn,* 189 F.3d 1194, 1200 (10th Cir.1999) (citation omitted) (holding that strong odor of marijuana emanating from vehicle provided reasonable suspicion, if not probable cause, to detain occupants of vehicle under *Terry* ). Viewing these facts in their totality, we conclude that Officer Allen had reasonable and articulable suspicion to stop Defendant under *Terry.*

### 2. Justification for the Protective Frisk

Defendant next argues that, even if Officer Allen had reasonable suspicion to make the initial stop, he did not have a reasonable belief that Defendant might be armed and dangerous and, therefore, should not have conducted the protective frisk. Evidence introduced at the suppression hearing and at trial indicates that after Officer Allen approached Defendant and his acquaintance and twice asked for their identification, Defendant passed Officer Allen and began walking backwards, facing Officer Allen, with his hands in the front pockets of his jeans. Noticing that Defendant was acting nervously, and fearing that he might be concealing a weapon, Officer Allen asked Defendant to remove his hands from his pockets. When Defendant refused, Officer Allen seized him for a protective frisk.

Defendant contends that evidence that he was acting nervously and had his hands in his pockets is insufficient to justify Officer Allen's protective frisk. We disagree. Although we recognize that "[n]ervousness alone cannot support reasonable suspicion of criminal activity," *United States v. Salzano,* 158 F.3d 1107, 1113 (10th Cir.1998) (citation omitted), "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion," *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citations omitted). Therefore, we may take into account Defendant's nervous behavior in determining whether Officer Allen's protective frisk was justified. However, we believe the more important factor here is that Defendant refused to take his hands out of his pockets after Officer Allen requested that he do so. Officer Allen testified that he asked Defendant to take his hands out of his pockets because he was concerned that Defendant might be concealing a weapon in one of the pockets. When Defendant refused to remove his hands, Officer Allen was reasonably justified in believing that Defendant might be armed and dangerous. *See Terry,* 392 U.S. at 27, 88 S.Ct. 1868 (citations omitted) ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."). Accordingly, we conclude that, under the totality of the circumstances, Officer Allen had the reasonable and articulable suspicion necessary to conduct the protective frisk of Defendant.

### 3. Scope of the Protective Frisk

Finally, Defendant argues that, even if Officer Allen was justified in stopping and frisking him, the scope of the frisk exceeded permissible limits. The evidence introduced at the suppression hearing and the trial indicates that after Officer Allen ordered Defendant to assume the protective frisk position, Defendant began refusing to separate his left and right feet. Given this, Officer Allen began patting down Defendant's left leg, where he felt a hard object, approximately three inches wide by four to five inches long, in the inner part of Defendant's left cowboy boot. Thinking that the object might be a gun, Officer Allen lifted up Defendant's pant leg and saw a tightly wrapped Saran Wrap package in the boot. Still unsure of what the object was, Officer Allen reached inside Defendant's boot to retrieve it, at which point Defendant kicked Officer Allen in the shoulder and started to run. Officer Allen was left holding the Saran Wrap package, which was later found to contain cocaine base.

Defendant contends that Officer Allen exceeded the permissible scope of his search of Defendant by reaching into Defendant's boot and pulling out the Saran Wrap package of cocaine base. We disagree. As noted, *Terry* permits a law enforcement officer to conduct a frisk of a suspect's outer clothing that is "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." 392 U.S. at 29, 88 S.Ct. 1868. If the officer discovers what he believes to be a weapon, he may reach inside the suspect's clothing and remove it. *See, e.g., Adams,* 407 U.S. at 148, 92 S.Ct. 1921 (holding that officer properly seized loaded gun he felt in suspect's waistband).

Here, Officer Allen testified that when he felt the bulge in Defendant's left cowboy boot, he thought the object might be a gun. Given this, Officer Allen had the right to investigate further by lifting up Defendant's pantleg so that he could reach inside the boot. Defendant argues, however, that once Officer Allen lifted up the pantleg and saw the Saran Wrap inside the boot, he should have concluded that the object was not a gun and abandoned his search. The difficulty with Defendant's argument is that Officer Allen testified that even after he lifted Defendant's pantleg, he was still not sure exactly what the object was; Officer Allen never testified that he ruled out that the object was a weapon. Even if, in retrospect, it "would have been more reasonable to think the hard object was drugs rather than a gun, that does not mean he would have been unreasonable to conclude that it was a gun and not drugs." *United States v. Brown,* 188 F.3d 860, 866 (7th Cir.1999) (holding the scope of an officer's *Terry* search reasonable even though the "hard object somewhat smaller than a ping-pong ball" that the officer believed was a gun butt turned out to be a package of crack cocaine). Accordingly, we conclude that Officer Allen's act of reaching inside Defendant's boot to retrieve what turned out to be a package of cocaine base did not exceed the scope permitted by *Terry.*

Although we note Defendant's reliance on *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) to support his argument that Officer Allen's search exceeded permissible limits, we believe that case to be inapposite. In *Dickerson,* the Court held that if in the process of lawfully patting down a suspect's outer clothing, the police officer "feels an object whose contour or mass makes its identity immediately apparent . . .; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." 508 U.S. at 375–76, 113 S.Ct. 2130.

Defendant argues that because the identity of the bulge in his cowboy boot was not immediately apparent to Officer Allen, Officer Allen was not justified under *Dickerson* in reaching inside the boot and confiscating the cocaine base. What Defendant appears to misunderstand is that the plainfeel exception of *Dickerson* was never invoked in this case; so long as Officer Allen had a reasonable belief that the object he felt might be a gun, he continued to have a right under *Terry* to reach into Defendant's boot to investigate further.

As a final matter, we recognize the Government's argument that Officer Allen also had probable cause to stop and search Defendant once he smelled the odor of burnt marijuana emanating from Defendant. However, given our determination that the district court properly denied Defendant's motion to suppress under *Terry*, we need not reach the issue of probable cause.

For all of the reasons stated above, we conclude that the district court properly denied Defendant's motion to suppress.

### B. Intent to Distribute Within 1,000 Feet of School

█ 21 U.S.C. § 860(a) is an offense that enhances the penalty for "[a]ny person who violates section 841(a)(1) or section 856 of [Title 21] by distributing, *possessing with intent to distribute*, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary ... school...." 21 U.S.C. § 860(a) (emphasis added). Defendant argues that the evidence presented at trial in this case was insufficient to convict him of violating 21 U.S.C. § 860(a) because the district court

did not require the Government to prove as an essential element of the crime that Defendant intended to distribute cocaine base within 1,000 feet of a school.[2] The issue of whether § 860(a) requires an intent to distribute a controlled substance within 1,000 feet of a school, as opposed to mere possession with an intent to distribute the controlled substance *somewhere*, is one of first impression for our court. Because the question hinges on the interpretation of a statute, we review the district court's decision *de novo*. *United States v. Jackson*, 248 F.3d 1028, 1030 (10th Cir.2001) (citation omitted).

Five of our sister circuits have previously addressed the precise issue before us today, and each has adopted a broad reading of § 860(a) by holding that the government need only prove that the defendant possessed illegal drugs within 1,000 feet of a school and intended to distribute them *somewhere*. See *United States v. Ortiz*, 146 F.3d 25, 28–30 (1st Cir.1998); *United States v. Lloyd*, 10 F.3d 1197, 1218 (6th Cir.1993); *United States v. McDonald*, 991 F.2d 866, 868–71 (D.C.Cir.1993); *United States v. Rodriguez*, 961 F.2d 1089, 1090–95 (3d Cir.1992); *United States v. Wake*, 948 F.2d 1422, 1429–34 (5th Cir.1991); see also *United States v. Hohn*, 8 F.3d 1301, 1307 (8th Cir.1993) (stating, in the context of addressing the defendant's claim that § 860(a) should not apply because the school he was accused of distributing drugs within 1,000 feet of was closed for remodeling at the time, that "[f]or conviction, [§ 860(a)] simply requires that the defendant have an intent to distribute (or manufacture) a controlled substance and at the time be within 1000 feet of a school."); *United States v. Walker*, 993 F.2d 196,

---

**2.** In its instructions to the jury, the district court stated "that the defendant did not have to know that he was on or within one thousand feet of a school, nor intend to possess with the intent to distribute drugs there."

198–99 (9th Cir.1993) (stating that for purposes of applying the sentence enhancement provided for in U.S.S.G. § 2D1.2, "[i]t does not matter whether the drugs were sold on school property or to school children, or whether the drugs were merely possessed near the protected location by someone unconnected to the school. It suffices that the drugs are present within 1,000 feet of the school."). On the other hand, several district courts have reached the opposite conclusion and held that the government must prove that the defendant intended to distribute the illegal drugs within 1,000 feet of a school. *See United States v. Watson,* 788 F.Supp. 22, 23–25 (D.D.C.1992), *overruled by McDonald,* 991 F.2d at 868–71; *United States v. McDonald,* 777 F.Supp. 44, 45–47 (D.D.C. 1991), *aff'd on other grounds,* 991 F.2d 866 (D.C.Cir.1993); *United States v. Testa,* 768 F.Supp. 221, 222–23 (N.D.Ill.1991); *United States v. Coates,* 739 F.Supp. 146, 152–53 (S.D.N.Y.1990); *United States v. Roberts,* 735 F.Supp. 537, 538–43 (S.D.N.Y.1990); *United States v. Liranzo,* 729 F.Supp. 1012, 1013–14 (S.D.N.Y.1990).

We find the reasoning of our sister circuits persuasive and adopt it as the law of this circuit: the government must prove that the defendant possessed illegal drugs within 1,000 feet of a school and intended to distribute them *somewhere.* Although we need not recap each of the bases relied upon by our sister circuits in their opinions, we note below the bases that we found particularly compelling.

First, we agree with the rationale espoused by the Sixth Circuit in *Lloyd.* There, the court held that because § 860(a) does not have a *mens rea* requirement, a jury need not find intent on the part of a defendant to distribute illegal drugs within 1,000 feet of a school. *Lloyd,* 10 F.3d at 1218; *see also Wake,* 948 F.2d at 1432 (citing *United States v. Falu,* 776

F.2d 46, 50 (2d Cir.1985)) ("[O]ur reading is consistent with a *strict liability* approach to the statute that recognizes Congress' intent to create a drug-free zone." (emphasis added)). We have likewise held that § 860(a) contains no knowledge requirement. *United States v. DeLuna,* 10 F.3d 1529, 1534 (10th Cir.1993) (citation omitted). Given this, we believe that a defendant need not intend to distribute drugs within 1,000 feet of a school to be convicted under § 860(a).

Second, we agree with the First, Third, and District of Columbia Circuits that the plain language of the statute supports our holding. *Ortiz,* 146 F.3d at 28; *McDonald,* 991 F.2d at 869; *Rodriguez,* 961 F.2d at 1092. As the court in *Rodriguez* explained:

> This provision applies to three types of criminal conduct: distributing drugs, possessing drugs with the intent to distribute, and manufacturing drugs. In cases involving the distribution or manufacture of drugs, it is clear that this provision requires that the *actus reus* must occur within 1000 feet of a school. Accordingly, it is reasonable to interpret the statute as applying in the same way to the offense of possession with intent to distribute. Since the *actus reus* for this offense is possession, it follows that possession of the drugs, not the intended location for distribution, must be located within 1000 feet of a school.

961 F.2d at 1092.

Finally, we also agree with the Third, Fifth, and District of Columbia Circuits' reasoning that the inclusion of "manufacturing" drugs within 1,000 feet of a school as an offense under § 860(a) indicates Congress's concern with the mere presence of large quantities of illegal drugs near schools, not just their distribution near schools. *McDonald,* 991 F.2d at 869; *Rodriguez,* 961 F.2d at 1092; *Wake,* 948

F.2d at 1431, 1433. As the *Rodriguez* court explained:

> By prescribing enhanced penalties for the manufacture of drugs near a school (regardless of the intended site of distribution), Congress made clear that it did not wish to confine the schoolyard statute to cases in which a defendant distributes or intends to distribute drugs near a school. Rather, Congress was more broadly concerned about serious drug crimes that occur in proximity to schools.

961 F.2d at 1092.

 Defendant urges us to apply the rule of lenity to adopt his narrow interpretation of § 860(a). We decline to do so. The rule of lenity "is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act such that even after a court has seized every thing from which aid can be derived, it is still left with an ambiguous statute." *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (internal citations, quotations marks, and modifications omitted). Section 860(a) is not grievously ambiguous; therefore, the rule of lenity does not apply.

 In sum, we hold that to obtain a conviction under § 860(a) for possession with intent to distribute, the government need only prove that the defendant possessed illegal drugs within 1,000 feet of a school and intended to distribute them *somewhere.* Because the Government presented sufficient evidence in this case to show that Defendant possessed cocaine base within 1,000 feet of a school and that he intended to distribute the cocaine base in Mobile, Alabama, we uphold the jury's verdict finding Defendant guilty of violating § 860(a).

## C. Lesser Included Offense Instruction

Defendant next argues that the district court erred in refusing to give a jury instruction on the lesser included offense of simple possession of cocaine base. He contends that the jurors could have found him guilty of simply possessing the cocaine base for his own personal consumption while finding him not guilty of possessing the cocaine base with the intent to distribute it.

 We review the district court's decision as to whether there is sufficient evidence to warrant a lesser included offense instruction for abuse of discretion. *United States v. Humphrey,* 208 F.3d 1190, 1206 (10th Cir.2000) (citing *United States v. Duran,* 127 F.3d 911, 914 (10th Cir.1997)). We recognize, however, that the standard is not one of "broad ranging discretion but is focused narrowly on whether there is any evidence fairly tending to bear on the lesser included offense." *Id.* To determine whether the district court should have given a lesser included offense instruction, we apply a four part test:

> First, the defendant must properly request the instruction; second, the elements of the lesser included offense must be a subset of the elements of the charged offense; third, the element required for the greater, charged offense that is not an element of the lesser offense must be in dispute; and fourth, the evidence must be such that the jury could rationally acquit the defendant on the greater offense and convict on the lesser offense.

*Id.* (citing *Duran,* 127 F.3d at 914–15).

The Government does not contest that the first three elements of the four part test are satisfied in this case. We thus turn to the ultimate question of whether the evidence in this case was such that the jury could rationally have acquitted Defen-

dant on the charge of possession with intent to distribute and convicted him on the lesser charge of simple possession. There is no dispute that evidence was introduced at trial that Defendant stated that he was traveling from Los Angeles, California to sell the four ounces of cocaine base he possessed in Mobile, Alabama. Defendant argues, however, that since evidence was presented at trial that he was truant from a drug rehabilitation program and that he had previously possessed seven ounces of cocaine and used some of it, the jury could have disregarded his statements that he intended to distribute the cocaine base in Mobile and inferred that Defendant would have actually used it.

 We disagree with Defendant's argument for two primary reasons. First, the evidence introduced at trial includes Defendant's admission that he intended to distribute the cocaine base. Such an admission essentially precludes us from finding that a rational jury could have acquitted Defendant on the charged offense and convicted him of simple possession. *See United States v. Martinez,* 979 F.2d 1424, 1433 (10th Cir.1992). Second, the quantity of cocaine base seized from Defendant in this case is such that no rational jury could infer that Defendant was in possession of the drugs for personal use. Testimony from an expert witness for the Government established that the cocaine base in Defendant's possession could produce approximately 472 rocks of crack cocaine, which would each sell for approximately $20 on the street. Even considering Defendant's prior drug use, we believe this evidence would prevent any rational jury from acquitting Defendant of possession of cocaine base with intent to distribute and convicting him of simple possession. Ac-

cordingly, we hold that the district court did not abuse its discretion in denying Defendant's request for a jury instruction on the lesser included offense of simple possession.

## D. Constitutionality of 21 U.S.C. § 860

Defendant next argues that he should not have been convicted and sentenced pursuant to 21 U.S.C. § 860 because the statute exceeds Congress's authority under the Commerce Clause of the United States Constitution. This argument is foreclosed by our decision in *United States v. Pompey,* 264 F.3d 1176, 1180 (10th Cir. 2001), which was issued subsequent to the completion of briefing in this case.

## E. Proof of Prior Convictions

Defendant lastly argues that, under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Government should have been required to plead and prove Defendant's prior felony drug convictions beyond a reasonable doubt. We rejected this argument in *United States v. Dorris,* 236 F.3d 582, 587–88 (10th Cir.2000), and will therefore not revisit it here.[3]

AFFIRMED.

---

3. Defendant acknowledges that this argument is foreclosed by our decision in *Dorris* and explains that he presents the argument solely

as the basis for a petition for certiorari to the United States Supreme Court.