**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 5 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

     v.

KRISTA NANETTE JOHNS,

     Defendant-Appellant.

No. 04-2142

(D. New Mexico)

(D.C. No. 02-2259 LH)

**ORDER AND JUDGMENT** *

Before **EBEL** , **MURPHY** , and **McCONNELL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument.

New Mexico State Police Officer Beau Johnston found cocaine on Petitioner Krista Johns when he patted her down during a traffic stop. Ms. Johns argues that the cocaine should be suppressed because the pat-down violated the

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Fourth Amendment. The district court, however, concluded that Officer Johnston had reasonable suspicion that Ms. Johns might have been armed and dangerous, and therefore denied Ms. Johns's suppression motion. We agree and AFFIRM.

I.

On September 15, 2002, Officer Johnston stopped a blue minivan for speeding on I-10 in New Mexico. The driver was Jeffrey Brown; Ms. Johns and her two-year-old daughter were the passengers. Officer Johnston asked for Mr. Brown's license and registration, and Mr. Brown produced a California identification card, an interim driver's license, and a number of rental car documents. He then accompanied Officer Johnston to the patrol car.

The rental documents indicated that the van had been rented by someone named Yolanda Diaz and was more than a week overdue. One copy of the rental agreement was signed by Ms. Diaz and listed no other authorized drivers; another copy listed Mr. Brown as an authorized driver but was not signed by Ms. Diaz. Officer Johnston, suspicious that Mr. Brown had no authority to operate the vehicle, asked him who Yolanda Diaz was. Mr. Brown said she was his daughter.

Officer Johnston left Brown at the patrol car and returned to the van to get some information to complete the speeding citation. While at the van, he asked Ms. Johns for her driver's license, which she produced, and asked her if she knew Yolanda Diaz. She replied that Yolanda was Brown's sister-in-law.

Officer Johnston returned to the patrol car and ran Ms. Johns's license. While doing so, he asked Mr. Brown for Yolanda Diaz's telephone number. Brown provided two numbers, but a dispatch officer was unable to contact Diaz using either one. Officer Johnston also asked Brown if there were any drugs in the van. He asked about several different drugs in turn—marijuana, cocaine, methamphetamine, heroin—and Mr. Brown denied possession of each. But, according to Officer Johnston, Mr. Brown's demeanor changed when he denied possession of cocaine. Officer Johnston then asked Brown for permission to search the van, and Brown gave both oral and written consent.

Before searching the vehicle, however, Officer Johnston asked Brown if he had any weapons on him. Brown told him he had a pocket knife, so Officer Johnston patted him down and retrieved the knife. He also found a drug pipe in a small pocket near Brown's ankle. Brown said the pipe was for smoking "speed" but that the last time he had used it was two days ago. Officer Johnston then asked Brown to stand near a fence away from the road while he searched the van.

At the van, Officer Johnston told Ms. Johns that Brown had consented to a search. He asked her if there were any drugs in the car—marijuana, cocaine, methamphetamine, heroin—and she denied it. But again, Officer Johnston observed a change in demeanor when he asked about cocaine. He then obtained

Ms. Johns's permission to search the vehicle and asked her to exit along with her child.

Ms. Johns stood up as if she were going to wrap a blanket around her daughter. But then she set the child down and adjusted the clothing around her thighs, waist, and bra. She was wearing baggy blue sweat pants, a loose-fitting, lime-green T-shirt, and a red bandana. Again she picked up the child, only to put her down again and re-adjust her clothing. Officer Johnston testified that she did this "maybe three or four [times]" before exiting the van. Aple. Supp. App. 76. When she finally exited the van, Officer Johnston executed the pat-down at issue and discovered several packages of cocaine.

## II.

When reviewing the district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. *U.S. v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004). The ultimate question of reasonableness under the Fourth Amendment is a legal conclusion that we review de novo. *Id*.

According to the Supreme Court's interpretation of the Fourth Amendment, officers may stop and frisk an individual when they have a reasonable and articulable suspicion that the person may be involved in criminal activity and may be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *U.S. v. Harris*,

-4-

313 F.3d 1228, 1234 (10th Cir. 2002). "The sole justification of [such a] search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29. We judge both the reasonableness of the officer's suspicion and the scope of the search by an objective standard, taking into account the totality of the circumstances. *U.S. v. Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004).

We find Officer Johnston's search to be reasonable here. At the time he conducted the pat-down, [1] Officer Johnston had discovered the knife and drug paraphernalia on Mr. Brown. He confronted an overdue rental van with a potentially unauthorized driver, and he had received inconsistent answers on the identity of the actual renter, Yolanda Diaz—Brown said she was his daughter, Ms. Johns that she was Brown's sister-in-law. Finally, both Brown and Ms. Johns gave nervous denials when asked if the van contained cocaine. Based on these facts, Officer Johnston began to suspect that Brown and Ms. Johns were involved in transporting drugs.

Knowing that drug transportation and weapons often go together, Officer Johnston then encountered Ms. Johns's strange behavior before she exited the

---

[1]Ms. Johns does not challenge Officer Johnston's conduct prior to the pat-down; therefore we do not evaluate it.

van. Three or four times she set her daughter down and adjusted the loose-fitting clothing around her thighs, waist, and bra. Based on this conduct and all that went before, Officer Johnston reasonably concluded that Ms. Johns was concealing something—possibly a weapon—under her clothing. A brief pat-down under these circumstances is not unreasonable. *Cf. Harris*, 313 F.3d at 1236 (odor of burnt marijuana, defendant's nervous behavior, and defendant's refusal to remove his hands from his pockets gave officer reasonable suspicion that defendant might be concealing a weapon in one of his pockets).

In response to this straightforward analysis, Ms. Johns argues that, whether or not these facts *could* give rise to reasonable suspicion, Officer Johnston harbored no *actual* suspicion, and therefore the pat-down was unreasonable. Aplt. Br. 12. One important obstacle to this argument is the district court's factual finding that Officer Johnston "belie[ved] that Ms. Johns was armed," Dist. Ct. Op. 4, a factual finding we will overturn only for clear error. In support of this finding, the government points to two pieces of evidence. First, on cross-examination, defense counsel asked Officer Johnston, "[Ms. Johns] didn't do anything that made you think she was dangerous[?]" to which Johnston replied, "No ma'am, other than adjusting herself just before she got out." Aple. Supp. App. 123. This response suggests that Officer Johnston *did* believe Ms. Johns might be dangerous. Second, when Ms. Johns finally exited the van, Officer

Johnston asked her if she had any weapons, again indicating that he thought she might be armed. In light of this evidence, we cannot conclude that the district court's factual finding was clearly erroneous, and we reject Ms. Johns's argument accordingly. [2]

## III.

Because Officer Johnston had a reasonable and articulable suspicion that Ms. Johns might be armed and presently dangerous, the pat-down was reasonable. The judgment of the United States District Court for the District of New Mexico is, therefore, **AFFIRMED** .

Entered for the Court,

Michael W. McConnell
Circuit Judge

---

[2]Our rejection of Ms. Johns's argument on this factual ground should not be taken as an implicit endorsement of her underlying legal claim, namely, that an officer must harbor an actual belief that the suspect may be armed in order to conduct a pat-down under *Terry*. Reasonable suspicion is an objective standard; the subjective beliefs of the officer are irrelevant. *U.S. v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001). We resolve the issue on factual grounds simply because the government did not raise the legal argument.