FILED
United States Court of Appeals
Tenth Circuit

June 19, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JACOBY TERRELL JOHNSON,

Defendant-Appellant.

No. 12-2124
(D.C. No. 1:11-CR-02560-BB-1)
(D. New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

---

Jacoby Terrell Johnson pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court sentenced him to twelve months and one day in prison plus two years of supervised release. He contends the court erred by not suppressing evidence obtained in violation of his Fourth Amendment rights. We disagree and AFFIRM.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.

Mr. Johnson was driving in the Southeast Heights area of Albuquerque, New Mexico, around 6:50 p.m. on May 31, 2011. The neighborhood is a high crime area that suffers from frequent illegal drug activity and violent crimes. Officers Jason Allred, R. White and T. Benavidez of the Albuquerque Police Department were patrolling the area on bicycle. Officer Allred observed Mr. Johnson's car drive by, heard loud music audible from over twenty-five feet away (in violation of an Albuquerque city ordinance), and smelled the odor of marijuana emanating from the vehicle. Officer Allred followed Mr. Johnson's car on his bicycle and saw the vehicle run over a large cardboard box sitting in the middle of the road, which became stuck under the car. Mr. Johnson stopped his car, got out, dislodged the box, then reentered his vehicle and closed the door.

Just after Mr. Johnson got back into his vehicle, Officer Allred approached the driver's side of his car and asked him to roll down his window. Officer Allred again smelled the odor of burning marijuana. He told Mr. Johnson that he was stopping him because of the marijuana and the loud music. When he asked Mr. Johnson if there was marijuana in the car, Mr. Johnson handed him the remnant of a blunt (a marijuana cigarette wrapped in a cigar) and said that was all the marijuana that was left. Officer Allred asked Mr. Johnson for his driver's license, registration, and proof of insurance. Mr. Johnson provided his license and registration, but told Officer Allred that the car was uninsured. During this

brief encounter, Mr. Johnson appeared to Officer Allred to be more nervous than a typical motorist would be during a traffic stop of this nature.

By this time, the other two police officers had arrived at the scene. Officer White stood on the passenger side of the vehicle near the rear and Officer Benavidez stood behind the vehicle, both observing Mr. Johnson while Officer Allred went back to his bicycle to write out citations. Before he left the car, Officer Allred told Mr. Johnson as a safety precaution: "Just hang tight. I'll be back with you in a few minutes. Keep your hands up on the steering wheel." Rec., vol. III at 15. But Mr. Johnson did not keep his hands on the steering wheel. To the contrary, the officers observed him reaching down to the front of his body, reaching around in the car, adjusting his body position in his seat, checking his mirrors, looking over his shoulder back at the officers, and otherwise moving around in his automobile so much that "the car was actually moving back and forth." *Id.* at 17. Mr. Johnson's increasingly nervous behavior and his failure to follow Officer Allred's instruction to keep his hands on the steering wheel concerned the officers, who became worried that Mr. Johnson might be concealing a weapon or looking for an avenue of escape.

Officer Allred had decided to tow the vehicle because it lacked insurance, as well as to issue citations to Mr. Johnson for the loud music and possession of marijuana. When he returned to the car with the citations, he noticed Mr. Johnson was sweating profusely. Because of Mr. Johnson's failure to keep his hands on

the steering wheel, his movement in the car, his erratic glancing around, and his increasing nervousness, Officer Allred became concerned that Mr. Johnson had a weapon. He asked Mr. Johnson to step out of the car and informed him that he was going to pat him down for weapons. Just before the patdown, Officer Allred asked Mr. Johnson if he had anything on his person that the officers needed to be worried about. Mr. Johnson replied that he had a gun, which was in the waistband of his pants underneath his t-shirt. After ascertaining by a computer check that the gun was stolen, the officers arrested Mr. Johnson.

It was subsequently determined that Mr. Johnson was a convicted felon and he was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He moved to suppress the gun from evidence. At the conclusion of an evidentiary hearing, the district court denied Mr. Johnson's motion, finding Officer Allred reasonably suspected that Mr. Johnson was armed and dangerous. Accordingly, the court concluded the protective frisk that produced the handgun did not violate Mr. Johnson's Fourth Amendment rights. Mr. Johnson then executed a plea agreement, waiving his right to appeal his conviction and sentence but reserving the right to appeal the denial of his motion to suppress.

## II.

In reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances, viewing the evidence in the light most favorable

-4-

to the government and the district court's findings. *United States v. Anderson*, 114 F.3d 1059, 1063 (10th Cir. 1997). We accept the district court's findings of fact unless they are clearly erroneous, but we review de novo the legal issue of the validity of a search. *See United States v. Ledesma*, 447 F.3d 1307, 1314 (10th Cir. 2006).

"'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons." *Adams v. Williams*, 407 U.S. 143, 146 (1972) (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)). "Nervousness alone cannot support reasonable suspicion of criminal activity," *United States v. Salzano*, 158 F.3d 1107, 1113 (10th Cir. 1998), but it is "a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). In *United States v. Harris*, 313 F.3d 1228 (10th Cir. 2002), we held that a suspect's excessively nervous, evasive behavior combined with a refusal to follow police instructions relating to officer safety can lead to an officer's reasonable suspicion that the subject is armed and dangerous. *Id.* at 1236 (suspect's nervous behavior and refusal to remove hands from pockets as instructed by police officer for safety reasons provided reasonable suspicion for protective frisk).

Here, as in *Harris*, a police officer was faced with a suspect displaying excessive nervousness and strange behavior who also refused to follow an

instruction directly related to officer safety—to keep his hands on the steering wheel. *See id.* ("[T]he most important factor [] is that Defendant refused to take his hands out of his pockets after [the police officer] requested that he do so."). Officer Allred testified at the suppression hearing that he asked Mr. Johnson to keep his hands on the steering wheel so that he and the other officers could see his hands and ensure he was not reaching for a weapon. When Mr. Johnson did not follow this instruction, it was objectively reasonable for Officer Allred to believe that Mr. Johnson might be armed and dangerous. In addition to Mr. Johnson's excessively nervous behavior and his failure keep his hands on the steering wheel, the incident took place in a high crime area, which further supports the justification for this protective frisk. *See Wardlow*, 528 U.S. at 124.

We conclude that, under the totality of the circumstances, Officer Allred had the necessary reasonable suspicion to conduct the protective frisk of Mr. Johnson. We AFFIRM.

ENTERED FOR THE COURT


Stephanie K. Seymour
Circuit Judge