**F I L E D**

**UNITED STATES COURT OF APPEALS**

**JAN 8 2004**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

BERT SANDERS,

    Defendant-Appellant.

No. 03-1005

(D.C. No. 01-CR-437-B)

(D. Colorado)

---

**ORDER AND JUDGMENT**   *

---

Before **SEYMOUR** , **HARTZ** , and **TYMKOVICH** , Circuit Judges.

---

Defendant Bert Sanders appeals his conviction by a jury of possession with intent to distribute 500 grams or more of cocaine, and possession with intent to distribute 50 grams or more of cocaine base. Defendant contends that (1) the district court should have suppressed evidence as a result of police misconduct; (2) the district court improperly instructed the deadlocked jury to deliberate until

---

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

they reached a unanimous verdict; and (3) the jury lacked sufficient evidence to convict him.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.      Background

### A.  Facts

On November 20, 2001, at approximately 7:00 p.m., two officers of the Aurora, Colorado, police department were patrolling in an unmarked car.  They approached a sport utility vehicle idling in the parking lot of an apartment complex and shined a flashlight in the window.  They observed Defendant reach toward the back of the vehicle and then drive away.  The officers followed Defendant's vehicle, which stopped near the apartment buildings.

Defendant exited his vehicle and ran towards the apartment complex.  He appeared to be carrying a handgun in one hand and a backpack in the other.  As the officers approached the building and identified themselves as police officers, a man emerged from the bushes in front of the building and fled.  The man appeared to be carrying the backpack, but not the handgun.  (The parties disagree as to whether the evidence establishes that Defendant was the individual who emerged from the bushes and fled.)  As he fled, the man threw the backpack on top of a carport and ran down an alleyway.  The officers continued their pursuit, and eventually took Defendant into custody.  The backpack was retrieved.  It contained cocaine and cocaine base, a scale, razor blades, plastic bags, and a

calculator. Defendant's vehicle contained a box of .38 caliber bullets, with six missing. No handgun was found.

Defendant had no incriminating evidence on his person when he was arrested, and his fingerprints were not found on any of the items in the backpack. He claimed at trial that he was at the apartment complex with a friend who was visiting another friend.

## B. Proceedings Below

Defendant was charged with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(ii), and possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(iii). Defendant filed a motion to suppress, which was denied, and Defendant was tried by a jury.

At trial the prosecution introduced the drugs and other items recovered from the backpack and the .38 caliber bullets found in Defendant's vehicle. Also, the two officers who observed and detained Defendant testified. The officer who pursued the fleeing man on foot testified that he was certain that Defendant was the man who threw the backpack on the carport roof.

The jurors began their deliberations on August 6, 2002, at 11:13 a.m. Shortly before 5:00 p.m. the jurors informed the court in writing that they had reached a final decision, but that their decision was not unanimous. After

conferring with counsel, the court sent the jury a note asking whether it wished to continue deliberating until 5:30 or recess at 5:00 p.m. The jury responded that it would not have reached a unanimous verdict at either time, but would do as the court wished. The court then proposed an Allen instruction to counsel. The court read this instruction to the jurors and released them for the evening. The following morning the court distributed written copies of the instructions to the jury. After deliberating for nearly four more hours, the jury convicted Defendant on both counts.

## II.    Analysis

### A.  Motion to Suppress

Defendant first challenges the district court's denial of his motion to suppress, contending that "the police lacked reasonable suspicion to initiate their pursuit of him on private property." Aplt. Br. at 7. Defendant claims that the officers were unjustified in shining a flashlight into his vehicle and following him across the parking lot when he drove away. He contends that the officers' "actions in pursuing [him] were not justified at the inception and the resultant chasing . . . and other acts were unreasonable in scope of the circumstances as they existed at the inception." Aplt. Br. at 9. As a consequence, he argues, the evidence seized by the officers was the fruit of unconstitutional conduct and must be suppressed.

We review for clear error the factual findings underlying a district court's denial of a motion to suppress, viewing the evidence in the light most favorable to its ruling. United States v. Harris, 313 F.3d 1228, 1233 (10th Cir. 2002). We review de novo the ultimate determination of reasonableness under the Fourth Amendment. Id.

We note at the outset that Defendant's contention that the parking lot was private property is irrelevant to our analysis. Assuming that it was private property, it was not Defendant's property; he did not even reside at the apartment complex, and he was allegedly there with a friend visiting another friend. He did not exercise "lawful possession, ownership, or control" over the parking lot, and had no "right to exclude others" from it. United States v. Marchant, 55 F.3d 509, 516-517 (10th Cir. 1995). Thus he cannot complain that the officers may have trespassed by entering it.

Defendant's challenge to the officers' initial actions—shining a flashlight into his vehicle and following him when he drove away across the parking lot—also fails. The Fourth Amendment prohibits unreasonable searches and seizures. Because the officers' initial actions constituted neither a search nor a seizure, the Fourth Amendment is not implicated.

First, using a flashlight to look inside the window of Defendant's vehicle was not a search. The officers were permitted to look inside the vehicle while it

idled in the parking lot. See United States v. Mercado, 307 F.3d 1226, 1230 (10th Cir. 2002) ("The officer was at liberty to look in the windows of the van and make observations. Appellant did not have any heightened right to privacy in the area around the van because the van was not located on Appellant's private property."). Nor was it impermissible for the officers to use a flashlight to facilitate their observations. See United States v. Lee, 274 U.S. 559, 563 (1927) ("Such use of a searchlight [to view cases of liquor on the deck of a boat] is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution."); Texas v. Brown, 460 U.S. 730, 739-40 (1983) (plurality opinion) ("It is . . . beyond dispute that [an officer's] action in shining his flashlight to illuminate the interior of [a] car trenched upon no right secured . . . by the Fourth Amendment. . . . [T]he use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection."); Marshall v. United States, 422 F.2d 185, 189 (5th Cir. 1970) ("When the circumstances of a particular case are such that the police officer's observation would not have constituted a search had it occurred in daylight, then the fact that the officer used a flashlight to pierce the nighttime darkness does not transform his observation into a search."). Thus, Defendant enjoyed no protection from the officers' shining a light into his vehicle as they approached it in the parking lot.

Second, pursuing Defendant as he drove away across the parking lot was not a seizure. A Fourth Amendment seizure "requires either the use of physical force by the police officer or submission by the individual to the police officer's assertion of authority." <u>Harris</u>, 313 F.3d at 1234 (citing <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991)). Hence, "[a] police officer's assertion of authority without submission by the individual does not constitute a seizure." <u>Id.</u> When the officers turned their car around to pursue Defendant, he was not yet seized, and his Fourth Amendment rights were not yet implicated. As in <u>Hodari D.</u>, 499 U.S. at 629, Defendant discarded the evidence introduced against him while fleeing from the police. He abandoned the backpack before the officers had laid a hand on him and before he had submitted to any show of authority.

In sum, the evidence recovered was not the fruit of a Fourth Amendment violation.

## B. The <u>Allen</u> Charge

Plaintiff next argues that the district court should have declared a mistrial rather than instructing the jury to continue deliberating when the jury announced that it had not reached a unanimous decision at the end of the first day of deliberations. We first address our standard of review. Plaintiff contends that we should review for abuse of discretion the district court's refusal to declare a mistrial and its decision to instruct the jury in accordance with <u>Allen v.</u>

United States, 164 U.S. 492 (1896), and review de novo whether the instruction was impermissibly coercive. The government contends that because Defendant did not object to the district court's giving the Allen instruction, our review is for plain error. We agree with the government.

The record indicates that Defendant not only failed to request a mistrial or object to the giving of the Allen instruction, he affirmatively agreed to the giving of the instruction and its language. After the district court discussed the language of its proposed instruction with the parties, defense counsel stated: "Judge we don't object to the instruction. The question I think is whether it should be given tonight or given in the morning." Aplee. Supp. App. at 188. Defense counsel then agreed that the court should give the instruction that evening and did not object to the language of the instruction.

Because Defendant objected to neither the giving of the instruction nor its language, we review for plain error the district court's decision to give the instruction. United States v. Hernandez-Garcia, 901 F.2d 875, 876 (10th Cir. 1990). Under the plain error standard, "reversal is warranted only when there is: (1) an error; (2) that is plain or obvious; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. James, 257 F.3d 1173,1182 (10th Cir. 2001).

We have long sanctioned the use of an <u>Allen</u> charge like that given here, although we have "traditionally urged caution" in its use. <u>Gilbert v. Mullin</u>, 302 F.3d 1166, 1173 (10th Cir. 2002) (internal quotation marks omitted). We review the instruction "in its context and under all the circumstances." <u>Id.</u> (internal quotation marks omitted). When considering whether an <u>Allen</u> instruction was impermissibly coercive, we examine, among other factors, "(1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations." <u>Id.</u> (internal quotation marks omitted).

We begin by examining the language of the challenged instruction. The instruction read to the jurors was as follows:

> As stated in my instructions, it is your duty to consult with one another and to deliberate with a view to reaching agreement if you can do so without violence to your individual judgment. Of course you must not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinions of other jurors or for the mere purpose of returning a verdict. Each of you must decide the case for yourself, but you should do so only after consideration of the evidence with your fellow jurors.

> In the course of your deliberations you should not hesitate to reexamine your own views and to change your opinion if you are convinced it is wrong, whether you are in the majority or the minority. To bring 12 minds to a unanimous result, you must examine the question submitted to you openly and frankly with proper regard for the opinions of others and with disposition to reexamine your own views.

> Remember that if the evidence fails to establish guilt beyond a reasonable doubt, say so; if the evidence establishes guilt beyond a

-9-

reasonable doubt, say so. As I instructed you earlier, the burden is upon the government to prove beyond a reasonable doubt every essential element of the crimes charged.

Finally, remember that you are not partisans, you are judges, judges of the facts. Your sole interest is to seek the truth from the evidence. You are the exclusive judges of the credibility of the witnesses and the weight of the evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reconsider all the evidence bearing upon the questions before you. You may take all the time that you feel is necessary. There is no reason to think that another trial would be tried in a better way or that a more conscientious, impartial or competent jury would be selected to hear it. Any future jury must be selected in the same manner and from the same source as you. If you should fail to agree on a verdict, the case is left open and must be disposed of at some later time.

. . . .

Please go back now to finish your deliberations in a manner consistent with your good judgment as reasonable.

Aplee. Supp. App. at 190-91.

Defendant contends that this instruction was impermissible under our opinion in United States v. McElhiney, 275 F.3d 928 (10th Cir. 2001). He argues that, "as in McElhiney, the charge herein omitted any admonition that [he] was still to be presumed innocent." Aplt. Br. at 11. We disagree. In McElhiney this court was troubled by the omission of language cautioning "that the burden of proof belonged to the government, not the defendant." Id. at 943. But the instruction challenged here stated that "the burden is upon the government to

-10-

prove beyond a reasonable doubt every essential element of the crimes charged."

Aplee. Supp. App. at 191.

> Defendant also contends:
>
> the charge herein, as in <u>McElhiney</u>, contained embellishments in the form of the judge's directions that the jury return to the court the next morning and to continue their deliberations until they arrived at a verdict. The clear implication of the court's charge was that there were only two possible decisions: guilty or not guilty. It did not leave open the third possibility of a hung jury.

Aplt. Br. at 11-12. Even if this constituted an embellishment, it is not similar to the embellishment at issue in <u>McElhiney</u>, where the trial court "repeatedly emphasized the desirability of a verdict" and also made "statement[s] about expense and danger," 275 F.3d 944-45. In contrast, the instruction here cautioned, "Of course you must not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinions of other jurors or for the mere purpose of returning a verdict. Each of you must decide the case for yourself . . . ." Aplee. Supp. App. at 190. This hardly ruled out the possibility of a hung jury in the event that jurors could not reconcile their honestly held convictions.

In addition, Defendant contends that the district court told the jurors that they "had not reached a final decision until they had reached a unanimous verdict." Aplt. Br. at 12. Defendant provides no citation to the record for this contention, and we cannot locate such a statement in the record. Rather, the

-11-

district court made this statement to the parties outside the hearing of the jury, and never repeated it after defense counsel objected. Aplee. Supp. App. at 183-85.

Therefore, we hold that the language of the supplemental instruction was not impermissibly coercive.

Second, as for whether the instruction was presented with other instructions, we note that on the third day of deliberations the district court provided the jurors with written copies of both the full set of instructions and the supplemental instruction. The court had read the supplemental instruction to the jury at the end of the second day of trial (the first day of deliberations) and then dismissed the jury for the evening. When the jurors returned the next morning, the district court "handed . . . each of [them] an individual set of the instructions that were given to [them] at the conclusion of the case." Aplee. Supp. App. at 195. Less than thirty minutes after the jury reconvened to continue deliberating, the district court, at the jury's request, provided a written copy of the supplemental instruction to each juror. We hold that the district court mitigated any potentially coercive effect by providing the jury with copies of the full set of instructions before its deliberations could be influenced by the supplemental charge.

Third, we consider the timing of the challenged instruction. In <u>Gilbert</u> this court was concerned that the instruction was given "after 11:00 p.m., and that the jury was kept deliberating well past midnight." 302 F.3d at 1175. There was no such problem here. The district court provided the instruction orally in the early evening on the first day of deliberations and promptly excused the jury according to schedule. <u>See, e.g.</u>, <u>United States v. Arney</u>, 248 F.3d 984, 987& 989 (10th Cir. 2001) (upholding guilty verdict where <u>Allen</u> instruction given between 5:00 and 5:30 p.m., and jury returned verdict after one hour of further deliberations that evening); <u>cf. Gilbert</u>, 302 F.3d at 1175 (finding no impermissible coercion even though the trial court gave an <u>Allen</u> instruction after 11:00 p.m. and kept the jurors deliberating past midnight, heightening the "real danger that jurors in the minority camp will feel significant pressure to switch their votes"). Releasing the jurors for the evening after giving the instruction minimized any potential coercive effect. Although "the preference is that the <u>Allen</u> instruction be given prior to impasse or deadlock, we have not adopted this as a per se rule." <u>Arney</u>, 248 F.3d at 989 (internal citation omitted).

Fourth, we consider the length of the jury's deliberations after receiving the instruction. The record indicates that the jury reported at 9:10 a.m. on August 7, 2002, the third day of trial. After providing each juror with a copy of the jury instructions, the district court excused them to deliberate at 9:12 a.m. At 9:35

-13-

a.m. the jury requested copies of the challenged instruction, which the court had provided orally the previous evening. After neither party objected, the court provided a written copy to each juror. At 1:30 p.m., the jury returned its verdict.

We have upheld verdicts when the jury deliberated for as little as one hour and twenty minutes after receiving an <u>Allen</u> instruction. <u>See</u> <u>McElhiney</u>, 275 F.3d at 946. In this case the jury deliberated substantially longer. The length of the deliberations strongly argues against the possibility of impermissible coercion.

Based on our consideration of all circumstances evident in the record, we hold that the district court did not plainly err by providing an <u>Allen</u> instruction with Defendant's assent.

## C. Sufficiency of the Evidence

Defendant's final argument is that there was insufficient evidence to support the guilty verdict. We review de novo the sufficiency of the evidence, and "ask[] whether, when considered in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." <u>United States v. Lewis</u>, 240 F.3d 866, 870 (10th Cir. 2001). When conducting this review, "[w]e do not question the jury's credibility determinations or its conclusions about the weight of the evidence." <u>United States v. Allen</u>, 235 F.3d 482, 492 (10th Cir. 2000) (internal quotation marks omitted).

Defendant concedes that the government established at trial, through the testimony of the officers, that he was the man in the vehicle into which the officers shined a flashlight, who drove away when they did so, and who was then seen emerging from the vehicle carrying a backpack. But Defendant contends that the jury could not have concluded beyond a reasonable doubt that he was the man whom the officers saw fleeing from nearby bushes, and who threw the backpack on the carport roof as one of the officers pursued him on foot. As support for this contention, he notes that forensic testing did not link him to the evidence recovered from the backpack and that the officers lost sight of the man they were pursuing before eventually tackling and arresting Defendant as he approached from another direction.

Nevertheless, there was undoubtedly sufficient evidence to sustain the verdict. The officer who had pursued the suspect, testified: "I was right behind him. I'm a hundred percent positive I saw him throw the backpack up onto the top of the carport and continue running." Aplee. Supp. App. at 180. The officer went on to testify that the man who threw the backpack on top of the carport was "[t]he same person I tackled. A hundred percent positive of that." Id. We hold that this testimony, especially when considered in light of Defendant's concessions about what was established by other testimony, provided sufficient

evidence for the jury to conclude beyond a reasonable doubt that Defendant was the man who threw the backpack on top of the carport.

## III.   Conclusion

AFFIRMED.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge