# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2111
_____

United States of America

*Plaintiff - Appellee*

v.

Randy Dabney

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: November 18, 2021
Filed: August 3, 2022

_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Randy Dabney conditionally pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine and was sentenced to 360 months in prison. He appeals, arguing that the district court[1] erred by denying his motion to suppress

---

[1]The Honorable Roseann Ketchmark, United States District Judge for the Western District of Missouri.

evidence, as well as his request for leave to file a second suppression motion out of time. He also argues that his sentence is procedurally and substantively unreasonable. We affirm.

I.

In November 2015, Officer Zach Pugh was patrolling Springfield, Missouri in a marked car. Around 1:25 a.m., Pugh noticed Dabney driving a truck in a high crime area. Pugh tailed the truck, but stopped when it abruptly pulled into the parking lot of a closed motorcycle shop. Pugh "didn't think a whole lot of it," and continued with his patrol.

Minutes later, when Pugh saw the same truck, he became suspicious that Dabney had pulled over to avoid police attention. After noting that the truck had a broken taillight, Pugh turned on his emergency lights to initiate a stop. Rather than pulling over, Dabney continued driving slowly for a while, weaving within the traffic lane. Pugh thought that Dabney could be trying to conceal contraband or a weapon before pulling over.

When Dabney eventually stopped, Pugh ran a routine warrant check. It showed that Dabney had a "Caution 2 Indicator," which meant that he was known to be armed and dangerous. The database also indicated that Dabney had recently been arrested for drugs, which Pugh thought made it more likely that he was armed.

Pugh walked back to the truck and motioned for Dabney to step out. With Dabney's consent, Pugh frisked him for weapons. When that didn't turn up anything of note, Pugh asked Dabney for permission to search his truck. He refused, but Pugh searched anyway. Pugh testified that, by that point, he had already decided to let Dabney go, which meant that Dabney could return to his truck and access any weapons hidden in the cab.

-2-

While another officer stood outside with Dabney, Pugh began searching areas of the truck where a weapon could be hidden. Pugh noticed a hole in the driver's door where a speaker should be. In the dark, he couldn't make out what was inside. He shined his flashlight and discovered a "rather large bag" containing a "white crystalline substance." Pugh pulled the bag out of the hole and saw that it contained several smaller baggies. The officers arrested Dabney, who waived his *Miranda* rights and admitted that the bag contained heroin, meth, and cocaine. The drugs recovered in this stop led to Counts 1 and 2 in the second superseding indictment.[2]

Dabney moved to suppress the drugs and his confession, arguing that Pugh's search of his truck violated the Fourth Amendment. The magistrate judge[3] who presided over the evidentiary hearing disagreed, concluding that Pugh had a reasonable suspicion that Dabney was armed, making his *Terry* frisk of Dabney's truck legal. The district judge agreed and adopted the magistrate judge's report and recommendation.

Several months after Dabney's first suppression motion was denied, he filed a second motion to suppress. That motion sought to suppress evidence from a second stop that occurred in April 2016. During that stop, officers found drugs and weapons in Dabney's trunk, and Dabney admitted to buying about a pound and a half of meth in the past month. That evidence led to Counts 3–5: possession of meth with intent to distribute;[4] possession of a firearm in furtherance of a drug crime;[5] and being a felon in possession of a firearm.[6]

---

[2]Conspiracy to distribute 500 grams or more of meth, 21 U.S.C. § 846, and possession of meth with intent to distribute, 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

[3]The Honorable David P. Rush, United States Magistrate Judge for the Western District of Missouri.

[4]21 U.S.C. §§ 841(a)(1), (b)(1)(C).

[5]18 U.S.C. § 924(c)(1)(A).

[6]18 U.S.C. §§ 922(g)(1), 924(a)(2).

The magistrate judge denied the second suppression motion as untimely. Dabney then moved for leave to file the untimely second suppression motion, arguing that his new counsel "had insufficient time to review all discovery materials, meet with [him] and prepare a defense." The magistrate judge recommended denying the motion, reasoning that Dabney hadn't "shown good cause for his failure to raise th[e] suppression issue until over two years after the deadline." The district court agreed.

Dabney conditionally pleaded guilty to conspiring to distribute 500 grams or more of meth (Count 1). The district court sentenced him to 360 months in prison, the bottom of the Guidelines range. Dabney appeals.

II.

On appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and the denial of the suppression motion *de novo*. *United States v. Smith*, 820 F.3d 356, 359 (8th Cir. 2016).

Dabney argues that Pugh's search violated his Fourth Amendment right to be free from unreasonable searches and seizures. Typically, officers need a warrant to perform a search. *See, e.g.*, *Kentucky v. King*, 563 U.S. 452, 459 (2011) ("Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured."). But there are exceptions. Relevant to this appeal, officers may search a vehicle without a warrant when they have a reasonable suspicion that a motorist is dangerous and "may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983).

The district court found that Pugh had reasonable suspicion to search Dabney's truck for weapons, and we agree. There were several "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]" Pugh's belief that Dabney was armed and dangerous. *Id.*

(quotation omitted). Dabney was slow to pull over after Pugh turned on his emergency lights, which Pugh believed indicated that he was hiding contraband. Plus, Pugh's warrant check revealed that Dabney had a "Caution 2 Indicator," meaning Dabney was known to be armed and dangerous. It also revealed that Dabney had prior drug offenses, which in Pugh's experience correlated with gun possession. Given these facts, an officer could have reasonably suspected that Dabney was dangerous and had weapons in his truck.

Dabney argues that, because he was not inside his truck at the time it was searched, there was no reasonable suspicion that he would grab a weapon. As a result, he says, Pugh had no basis to search his truck. But this argument is squarely foreclosed by Supreme Court and Eighth Circuit precedent. *See id.* at 1050–51 (upholding *Terry* frisk of car even though suspect was outside of the car); *United States v. Rowland*, 341 F.3d 774, 783 (8th Cir. 2003) ("[I]t is well settled [that] a *Terry* search of a vehicle's interior is permissible even after the un-arrested occupants have been removed from the vehicle.").

Dabney also claims that officers could have avoided any threat he posed by leaving before he returned to his truck. But officers don't need to "adopt alternate means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." *Long*, 463 U.S. at 1052. Pugh was entitled to search Dabney's truck, rather than flee the scene before Dabney could access a gun.

Dabney further argues that even if Pugh was justified in searching the truck, he exceeded the lawful scope of that search. First, Dabney says that the stereo hole was not large enough to contain a weapon. If that were true, Pugh's search might have been unlawful. *See Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (*Terry* searches "must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.") (quotation omitted). But the district court, adopting the recommendation of the magistrate judge, found that the stereo hole was big enough to hold a gun. Dabney has given us no reason to think that this finding was clearly erroneous.

-5-

Second, Dabney argues that Pugh unlawfully exceeded the scope of his search by shining a flashlight into the stereo hole. Essentially, he claims that the moment Pugh realized that there wasn't a weapon in the stereo hole, he was required to stop looking. But officers don't violate the Fourth Amendment by using "a flashlight to facilitate their observations." *United States v. Sanders*, 87 F. App'x 83, 86 (10th Cir. 2004). We held as much in *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990) (holding that officer was entitled to shine flashlight into a suspect's car during a *Terry* stop).

Pugh had a reasonable suspicion that Dabney was armed and dangerous, and he never exceeded the lawful scope of his *Terry* frisk of Dabney's truck. Accordingly, the district court was correct to deny Dabney's first suppression motion.

## III.

Several months after the district court denied the first suppression motion, Dabney moved for the appointment of new counsel. A new lawyer was appointed, but quickly withdrew due to a conflict of interest. Dabney received another attorney in November 2018, roughly eleven months after the magistrate judge recommended that his suppression motion be denied. In June 2019, over two years after Dabney filed his first suppression motion and roughly seven months after Dabney got a new attorney, he filed a second suppression motion. That motion sought to exclude evidence obtained from his second traffic stop in April 2016. The magistrate judge denied that motion as untimely, and Dabney moved for leave to file his second suppression motion out of time. The district court, adopting the magistrate's report and recommendation, denied the motion, concluding that Dabney had failed to show good cause for his delay. Dabney appeals, arguing that his lack of time with his new lawyer constituted good cause for missing the deadline. *See* Fed. R. Crim. P. 12(c). We review the denial of leave to file an untimely motion for abuse of discretion. *United States v. Blanks*, 985 F.3d 1070, 1072 (8th Cir. 2021).

There are several problems with Dabney's argument. First, appointment of new counsel is not good cause for filing an untimely motion. *See, e.g.*, *United States v. Trancheff*, 633 F.3d 696, 698 (8th Cir. 2011) (per curiam) ("The desire to suppress incriminating evidence and the retention of new counsel are not by themselves sufficient to establish good cause to justify relief from a waiver."). But even if it were, Dabney's argument would still fail. Dabney filed his second suppression motion seven months after he was appointed new counsel. In fact, Dabney had already received a seven-month continuance of trial, yet waited until less than two months before the trial date to bring his second motion. Nowhere does Dabney explain why he needed so much time for a routine suppression motion.

Additionally, even if the district court had erred, any error would have been harmless. The evidence from Dabney's second traffic stop related to Counts 3–5 of the second superseding indictment—counts that were dropped as part of Dabney's plea deal. So the evidence didn't affect Dabney's conviction. And since the exclusionary rule doesn't apply at sentencing, *United States v. Tauil-Hernandez*, 88 F.3d 576, 581 (8th Cir. 1996), the district court was free to consider this evidence when imposing Dabney's 360-month sentence. Accordingly, we affirm the district court's order denying Dabney leave to file an untimely suppression motion.

IV.

In 2020, Dabney entered a conditional guilty plea. He reserved the right to appeal the denial of his first suppression motion and his motion to file out of time, but waived the right to appeal on most other grounds.[7] Specifically, Dabney waived the right to appeal "a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence." Despite this clear and unequivocal waiver, Dabney now attempts to appeal his sentence as procedurally and substantively unreasonable. Because Dabney knowingly and voluntarily waived

---

[7]Except on grounds of ineffective assistance of counsel or prosecutorial misconduct, neither of which is relevant here.

his appellate rights, we will not consider these issues unless doing so would constitute a miscarriage of justice. *United States v. Blue Coat*, 340 F.3d 539, 542 (8th Cir. 2003). We find that Dabney's 360-month, within-Guidelines sentence for conspiracy to distribute more than 500 grams of meth is not a miscarriage of justice, and accordingly dismiss Dabney's claim.

V.

Pugh's search was legal, and the district court did not abuse its discretion by denying Dabney leave to file a second, untimely suppression motion. His remaining claims are waived. Accordingly, we affirm.

_____