FILED
United States Court of Appeals
Tenth Circuit

June 1, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOE EDDIE PUGH, JR.,

Defendant - Appellant.

No. 09-6285

(W.D. Oklahoma)

(D.C. No. 09-CR-00232-HE-1)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On April 3, 2008, following a brief vehicle pursuit, Oklahoma City Police Department ("OCPD") officers arrested Joe Eddie Pugh, Jr., a convicted felon. They found in his possession a loaded Ruger 9mm handgun. Mr. Pugh was

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

subsequently indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Without a plea agreement, Mr. Pugh pled guilty and was sentenced to 84 months' imprisonment, followed by three years of supervised release. Arguing that his sentence is substantively and procedurally unreasonable, Mr. Pugh appeals. We affirm.

## BACKGROUND

As indicated, Mr. Pugh was arrested and charged with being a felon in possession of a firearm.[1] Following his guilty plea, and in preparation for sentencing under the advisory United States Sentencing Commission, Guidelines Manual ("USSG"), the United States Parole Office prepared a presentence report ("PSR"). The PSR calculated a total offense level of 17, which, with a criminal history category of IV, yielded an advisory Guidelines sentencing range of 37 to 46 months. The PSR further noted that the preparing officer saw no grounds for either departing or varying from the advisory Guidelines range. The PSR noted Mr. Pugh's extensive criminal history, beginning at the age of 12.

The government objected to paragraphs 82 and 83 of the PSR, arguing that it believed an upward departure or variance was warranted based on the relevant 18 U.S.C. § 3553(a) sentencing factors, particularly the nature and circumstances

---

[1]In fact, the OCPD officers who arrested Mr. Pugh were looking for him, because there was an outstanding Oklahoma County warrant to arrest him on the charge of shooting with intent to kill.

of the offense, the history and characteristics of Mr. Pugh, the need to reflect the seriousness of the offense, and the need to afford adequate deterrence to criminal conduct and to protect the public from any further crimes by Mr. Pugh. In response, Mr. Pugh objected to PSR paragraphs 39 through 41, which included within his criminal history three violent crimes where the charges were ultimately dismissed.

The government subsequently filed a Sentencing Memorandum and Motion for Upward Variance, arguing that Mr. Pugh's extensive criminal history of crimes involving violence and the possession of firearms, as well as his consistent affiliation with the Westside Hustlers criminal street gang, warranted a higher sentence than that suggested by the Guidelines. Mr. Pugh also filed a Sentencing Memorandum, arguing that his extensive criminal record derived from a "lack of parental supervision, negative peers, and substance abuse beginning at the age of 8." Sentencing Mem. at 2-3, R. Vol. 1 at 10-11.

The sentencing hearing took place on December 2, 2009. The district court adopted the PSR on all undisputed factual matters. As indicated, the PSR recommended a total offense level of 17, a criminal history category of IV, and a suggested sentencing range of 37 to 46 months. The government again asked the district court to vary upward based upon Mr. Pugh's gang affiliation and violent criminal history. The government offered the testimony of OCPD Detective Jeff Reed, and seven exhibits, including OCPD police reports, photographic line-ups,

a state court bind-over order and Kansas Department of Corrections records. When Mr. Pugh objected to the introduction of that evidence on Sixth Amendment and due process grounds, the district court overruled the objection.

Detective Reed then testified that he was familiar with the criminal street gang known as the Westside Hustlers, who had been involved in a series of drive-by shootings and drug offenses. Mr. Pugh does not disavow membership in that gang. The detective further testified that he had investigated two drive-by shootings involving Mr. Pugh. One such shooting occurred on July 15, 2008, when witnesses identified the shooter as a black male Westside Hustler in his early twenties wearing braided hair. Mr. Pugh was the only Westside Hustler matching that description. Detective Reed also presented a photographic lineup he had shown to the witness of the July 15, 2008, drive-by shooting, from which the witness identified Mr. Pugh as the shooter. Mr. Pugh was prosecuted for that shooting in Oklahoma state court, and Detective Reed presented the relevant state bind-over order for the preliminary hearing.

Detective Reed provided similar testimony and evidence relating to a June 29, 2008, drive-by shooting committed by a black male with braided hair and affiliated with the Westside Hustlers. The detective again introduced a photographic lineup, from which the witness to the shooting positively identified Mr. Pugh as the shooter. The final pieces of evidence presented by Detective Reed were Kansas Department of Corrections disciplinary reports, which revealed

Mr. Pugh had misused state property, disobeyed orders, engaged in misconduct, theft and lying, and had been caught in a restricted area, all while he was incarcerated for a state offense. Finally, the detective presented an OCPD firearms report on the June and July drive-by shootings, which indicated both involved the same pistol (a 9mm caliber), and he presented an interview he had conducted with a known Westside Hustler, who knew Mr. Pugh and stated that, during three drive-by shootings, he drove the car and Mr. Pugh was the shooter.

After hearing argument from both sides, the district court proceeded to sentencing. While taking the Guidelines as an advisory starting place, the court concluded that the Guidelines sentencing range did not provide an appropriate sentence:

> It does seem to me as I consider all this evidence here against the ultimate Section 3553 sentencing factors that this does appear . . . to be a case where the guidelines do not ultimately arrive at an appropriate sentence, . . . in principal part because of these other circumstances that have been dealt with in testimony and through the presentence report as to the nature of Mr. Pugh's activities.
> . . . It does seem to me that the evidence that we have heard here of participation in other drive-by shootings, and I guess a total of four or perhaps more drive-by shootings, by the defendant are pertinent here as I evaluate both the seriousness of this offense and as I consider the defendant's circumstances and history and characteristics of him, and as those ultimately bear on the other sentencing factors relating to the need to protect the public and to provide an appropriately serious response and so on.
>
> In particular, it seems to me that there is a difference when you're dealing with an offense of conviction, as we are here, of a felon in possession of a firearm, the circumstances do matter. Was the firearm in the felon's possession on some relatively non-serious

basis of perhaps a desire for personal protection or something like that doesn't justify it under the law, but at least it's a less serious circumstance than what we have here where the evidence I think makes it clear enough based on a course of conduct by the defendant over a period of several years that the purpose for his possessing the firearm was not something of the sort of simply self-protection, but it was being used in an ongoing manner, or the reason he kept it on him was to be a part of this broader pattern of criminal activity that we're concerned with here.

Tr. of Sentencing Hr'g at 43-44, R. Vol. 3. The court continued:

. . . And I think in particular, there is, of course, a need to deter this defendant from serious criminal misconduct in the future or to deter others who might be inclined to engage in the same conduct that's pertinent here. And of course, there is a need to protect the public from further crimes of the defendant.

The evidence that I've heard and that is indicated in the presentence report I think makes clear that is a very substantial concern here, and that a more lengthy sentence of incarceration is necessary to protect the public from the substantial risk of recidivism that does exist here based on the facts that have been established.

Id. at 45-46. The court was clearly concerned about Mr. Pugh's criminal history

and gang-related activity:

. . . And, of course, here it would be difficult, it seems to me, to identify a course of criminal activity involving anything more serious than these repetitive multiple instances of drive-by shootings that in my view have been established here by a preponderance of the evidence.

. . .

. . . And I would say, of course, too, in terms of evaluating both his personal characteristics and the circumstances out of which this offense arose that the evidence I think certainly establishes by a preponderance of the evidence that this criminal activity arose out of and was connected with significant gang involvement and gang

-6-

activity on the part of the defendant that also requires or suggests a more substantial sentence would be appropriate.

Id. The court determined that these negative and violent aspects surrounding Mr. Pugh's criminal conduct was not outweighed by the mitigating factors Mr. Pugh urged, such as his age and immaturity and lack of guidance as a youth.

The court accordingly sentenced Mr. Pugh to a sentence higher than that recommended by the Guidelines—i.e., 84 months, followed by three years of supervised release. This appeal followed, in which Mr. Pugh challenges his sentence as substantively and procedurally unreasonable.

## DISCUSSION

Mr. Pugh summarizes his argument as follows: "The district court committed Constitutional error by sentencing Mr. Pugh to a sentence that was 91% higher and over 3 years more than the high end of the advisory sentencing guidelines range of imprisonment. The variance from the advisory guidelines was based on judicial fact-finding of criminal activity for which Mr. Pugh was not convicted." Appellant's Br. at 11.

We now review all federal sentences for reasonableness, which "includes both a procedural component, as well as a substantive component which relates to the length of the resulting sentence." United States v. Smart, 518 F.3d 800, 803

(10th Cir. 2008). Mr. Pugh purports to challenge both the procedural and substantive aspects of his sentence.

### I. Procedural Reasonableness:

We have held that "if a district court bases a sentence on a factor not within the categories set forth in § 3553(a), this would indeed be one form of procedural error." Id.; see also United States v. Cook, 550 F.3d 1292, 1295 (10th Cir. 2008) ("A challenge to the application of a sentencing enhancement tests the procedural reasonableness of a sentence, which requires, among other things, a properly calculated Guidelines range"). Mr. Pugh argues that the district court's consideration of the drive-by shootings amounted to the consideration of a factor not within the § 3553(a) categories and, was therefore, procedurally unreasonable.

Mr. Pugh concedes, however, that our court has specifically held that uncharged and even acquitted conduct may be considered for sentencing purposes, and need only be proved by a preponderance of the evidence. United States v. Magallanez, 408 F.3d 672, 684 (10th Cir. 2005). Mr. Pugh submits that "these holdings are constitutionally infirm and that it is a violation of the Fifth and Sixth Amendments to the United States Constitution to sentence him on the basis of crimes for which he was not charged or convicted." Appellant's Br. at 15. We decline his invitation to discard these precedents. "[W]e are bound by the precedent of prior panels absent en banc consideration or a superseding contrary decision by the Supreme Court." United States v. Albert, 579 F.3d 1188, 1197

-8-

n.11 (10th Cir. 2009) (quotation omitted).  The district court committed no procedural error in selecting Mr. Pugh's sentence.

## II.  Substantive Reasonableness:

"A challenge to the sufficiency of the § 3553(a) justifications relied on by the district court implicates the substantive reasonableness of the resulting sentence."  Smart, 518 F.3d at 804.  The central inquiry is whether the district court abused its discretion:  "appellate 'reasonableness' review merely asks whether the trial court abused its discretion."  Rita v. United States, 551 U.S. 338, 351 (2007) (citing United States v. Booker, 543 U.S. 220 (2005)).  "Briefly stated, we now review 'all sentences–whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard.'"  Smart, 518 F.3d at 806 (quoting Gall v. United States, 552 U.S. 38, 40 (2007)).

Mr. Pugh argues his sentence is substantively unreasonable because "the district court imposed a sentence that was equal to a 91% increase above the high end of the advisory guidelines range."  Appellant's Br. at 19.  While he concedes that our court has evolved away from applying specific "sliding scale" comparisons to justify particular variances, he argues that we "continue[] to view the extent of the variance as an important factor in assessing the reasonableness of the sentence."  Id.

Mr. Pugh overstates what our cases require.  In reality, our court has emphasized the considerable discretion which must be afforded the district court's

-9-

sentencing decisions. See Smart, 518 F.3d at 806-10. "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Munoz-Nava, 524 F.3d 1137, 1146 (10th Cir. 2008) (internal quotations omitted). That standard has not been met in this case.

As the Supreme Court has stated, in reviewing the discretionary sentencing decisions of district courts to vary from a particular Guideline range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 552 U.S. at 51. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Id. While the variance in this case was substantial, we cannot say that it is outside the range of reasonableness. And "to the extent that [Mr. Pugh] is arguing that we must find 'compelling reasons' to support so large a variance, . . . this approach is no longer permissible after [Gall and Smart]." United States v. Pinson, 542 F.3d 822, 837 (10th Cir. 2009), cert. denied, 130 S. Ct. 1548 (Feb. 20, 2010).

In sum, we have carefully reviewed the entire record and can discern no procedural error in the district court's selection of a sentence, and we perceive nothing substantively unreasonable in the sentence imposed. The district court was clearly deeply concerned about Mr. Pugh's violent conduct in participating in

drive-by shootings, and his lengthy criminal past, beginning at the age of 12. The court's thorough explanation for its sentence, set out in part above, convinces us that the court carefully and thoughtfully exercised its discretion to reach a reasonable sentence.

## CONCLUSION

For the foregoing reasons, the district court's decision to impose an 84-month sentence is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge