**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 10, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ADAM DOUGLAS SHERWOOD,

    Defendant - Appellant.

No. 23-5122
(D.C. No. 4:20-CR-00307-JFH-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

The Fourth Amendment protects citizens from unreasonable searches and seizures. But police officers may, under Terry v. Ohio, 392 U.S. 1 (1968), perform investigatory stops and frisk persons they reasonably suspect have committed a crime. In this case, the district court held that officers had sufficient facts to create reasonable suspicion for a Terry stop and search. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Police dispatch in Tulsa, Oklahoma, received multiple emergency calls from different callers reporting gunshots throughout the night of May 22, 2020, with one caller reporting shots fired from a white Chevrolet Silverado at 6415 S. Mingo Road in Tulsa. Thirty minutes after the first call, Tulsa Police Officer Andrew DeGeorge saw a white Chevrolet Silverado pull into the 6415 S. Mingo Road parking lot. Based on the emergency calls—and Officer DeGeorge's disputed testimony that the truck's license plate was not illuminated in compliance with Oklahoma law—he stopped the truck and approached the driver's side window. The driver, Kenneth Rosenberg, did not roll down the window until commanded by Officer DeGeorge. Defendant Adam Sherwood sat in the passenger seat holding an open container of beer, and a woman, Chasidy St. Clair, sat in the back seat.

When asked, Rosenberg could not produce any identification, and both he and St. Clair admitted to being formerly convicted on felony gun charges. The occupants denied having any firearms or illegal drugs in the vehicle. However, Officer DeGeorge later testified that throughout the encounter the truck's occupants acted "squirrelly" and "nervous to a higher degree" than those involved in a run-of-the-mill traffic stop. He also noticed what he thought looked like a gun holster in the center console and asked for consent to search the vehicle, which Rosenberg denied.

Officer DeGeorge informed Rosenberg that because of Defendant's open container of beer, he had probable cause to search the vehicle. He then called for backup and waited to search the vehicle until other officers arrived. Officer

DeGeorge ordered Rosenberg out of the vehicle and saw an empty gun holster on his hip when he exited. He searched Rosenberg, then walked to the other side of the truck and ordered Defendant to exit. Defendant exited the truck, and Officer DeGeorge placed him in handcuffs for officer safety, but explicitly told Defendant he was not under arrest. He asked Defendant if he had anything he "should be aware of," and Defendant responded that he had a pocketknife in his left front pocket. Officer DeGeorge patted down Defendant and felt something in his left front pocket. He reached into the pocket and removed a small ball of cash and a baggie containing a brown crystalline substance police later determined was methamphetamine. He found no pocketknife on Defendant.

While Officer DeGeorge searched the occupants, another officer searched the truck and found "a fully loaded Ruger LCR revolver," a green zippered bag containing "digital scales and multiple plastic baggies," and "a magazine and chamber loaded Lorin semiautomatic pistol" without a serial number. The officers then Mirandized Defendant and arrested him. They later obtained a search warrant for his phone and uncovered text messages establishing that Defendant had distributed drugs.

State prosecutors first charged Defendant with drug and weapons offenses in Tulsa County District Court, but after the Supreme Court issued McGirt v. Oklahoma, 591 U.S. 894 (2020), a federal grand jury charged Defendant with drug conspiracy, possession of methamphetamine with intent to distribute, unlawful use of a communications facility, possession of a firearm in furtherance of a drug trafficking

3

crime, and being a felon in possession of a firearm.  At trial, Defendant moved to suppress evidence obtained from his person, the truck, and his phone, based on the theories that Officer DeGeorge lacked (1) reasonable suspicion to initiate the traffic stop, (2) probable cause to search the truck, (3) reasonable suspicion to frisk Defendant and also exceeded the scope of Terry when he reached into Defendant's pocket, and (4) that the Oklahoma state judge lacked legal authority to issue the warrant to search Defendant's phone.

The district court rejected Defendants arguments, and a jury convicted Defendant on the drug-conspiracy, possession-of-methamphetamine-with-intent-to-distribute, and unlawful-use-of-a-communications-facility charges.  The district court, following the presentence report, issued a two-level enhancement according to U.S.S.G. § 2D1.1(b)(1) for Defendant's firearm possession.

Defendant appealed, alleging the district court erred in denying his motions to suppress and abused its discretion in enhancing his sentence for unconvicted conduct.

## II.

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless they are clearly erroneous, and review de novo the ultimate question of reasonableness under the Fourth Amendment."  United States v. Leon, 80 F.4th 1160, 1164 (10th Cir. 2023) (quoting United States v. Cortez, 965 F.3d 827, 833 (10th Cir. 2020)).  "Factual findings 'are clearly erroneous when they are unsupported in the record, or if after our review of the record we have the definite and firm conviction'" that the district court

4

made a mistake.  Stone v. High Mountain Mining Co., LLC, 89 F.4th 1246, 1251 (10th Cir. 2024) (quoting Holdeman v. Devine, 572 F.3d 1190, 1192 (10th Cir. 2009)).

We apply the same two-part test as the district court when making Fourth Amendment reasonableness determinations.  United States v. Madrid, 713 F.3d 1251, 1255–56 (10th Cir. 2013).  An investigatory detention is reasonable if it is "justified at its inception" and the officer's actions are "reasonably related in scope to the circumstances which justified the interference in the first place."  Id. at 1256 (quoting Terry, 392 U.S. at 20).  We evaluate reasonableness based on the "totality of the circumstances" to determine whether "the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing."  United States v. Arvizu, 534 U.S. 266, 273 (10th Cir. 2002).  The evidentiary burden required for a Terry stop is lower than that to establish probable cause; Terry requires only "articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  United States v. Sokolow, 490 U.S. 1, 7 (1989) (first citing Terry, 392 U.S at 30, then citing United States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985)).  An officer may not rely on mere "inchoate and unparticularized suspicion or 'hunch.'"  Id. (citing Terry, 392 U.S. at 27).

### III.

Defendant's overarching theory is that the district court wrongly denied his motion to suppress evidence that officers obtained during the (a) initial traffic stop, (b) truck search, (c) Defendant's pat-down, and (4) search of Defendant's phone.

Defendant claims, as a threshold matter, that the state court lacked authority to stop him or to issue a search warrant for his phone, because McGirt established the

5

location of the stop as Indian country, and he is a licensed member of the Muscogee Tribe. As he acknowledges, we squarely addressed this issue in United States v. Pemberton, 94 F.4th 1130 (10th Cir. 2024), where we foreclosed jurisdictional appeals of this kind. There, we declined to exclude evidence gained from an investigation performed by Oklahoma state police, and a search warrant issued by an Oklahoma state judge and executed in post-McGirt Indian country. Pemberton, 94 F.4th at 1136. We held that when officers have an "objectively reasonable good-faith belief that their conduct is lawful," "the deterrence rationale of the exclusionary rule no longer applies." Id. at 1137. Using that same reasoning here, because the stop and searches occurred before McGirt issued, so long as the officers acted in good faith—and Defendant provides no evidence showing they did not—we will not exclude evidence gained through the state officers' actions or authorized by the state judge's search warrant. Thus we affirm the district court's decision to not suppress on jurisdictional grounds. We take each part of the officer interaction in turn.

### A.

First, Defendant claims Officer DeGeorge lacked reasonable suspicion for his initial traffic stop. He argues the officers had no particularized and objective basis for suspecting anyone in the truck of criminal activity, because the emergency calls came from anonymous callers, were made thirty minutes before the stop, and were too generic in their descriptions.

An emergency call may "justify an investigatory stop if under the totality of the circumstances the [call] furnishes both sufficient indicia of reliability and sufficient

information to provide reasonable suspicion that criminal conduct is, has, or is about to occur." United States v. Daniels, 101 F.4th 770, 777 (10th Cir. 2024) (quoting Madrid, 713 F.3d at 1258). We analyze the reliability of emergency calls using the five-factor test articulated in Florida v. J.L., 529 U.S. 266, 270–74 (2000), and affirmed in our Circuit in United States v. Chavez, 660 F.3d 1215, 1222 (10th Cir. 2011): (1) "true anonymity," (2) "contemporaneous, firsthand knowledge," (3) "detailed information," (4) "the informant's stated motivation," and (5) corroboration.

Here the calls were not anonymous. Every emergency caller gave his or her name and either his or her phone number or address, and some gave both. Each of the eight callers gave information on what they had experienced in real time. The calls all reported hearing gunshots with varying degrees of specificity, with one reporting seeing a white pickup truck, and another reporting seeing five shots fired from a white Chevrolet Silverado at 6415 S. Mingo Road. There is no indication the callers had any motivation beyond that of a generally concerned citizen. The number, timing, and locations of the eight calls also provides ample corroboration to establish the calls were reliable.

The short time intervals between calls and the close geographic proximity, combined with two matching vehicle descriptions, provided more specificity than courts often require to establish reasonable suspicion. See, e.g., United States v. Juvenile T.K., 134 F.3d 899, 904 (8th Cir. 1998) (finding reasonable suspicion based on calls made "forty minutes apart in the very early morning hours, identifying a male with a gun in a gray vehicle engaging in clearly criminal activity and, more important[ly], the vehicle's temporal and geographic proximity to the crime scenes"). Defendant claims that because

the calls occurred thirty minutes before Officer DeGeorge's sighting of the truck, he could not have reasonably suspected the truck to be the same one identified in the calls. But this argument fails.

Defendant cites no authority establishing thirty minutes is a time interval too attenuated for reasonable suspicion. Dispatch relayed eight calls reporting gunshots interspersed between 11:51pm and 12:27am. Officer DeGeorge made his stop at 12:58am, roughly thirty minutes after the last call reporting gunshots. An officer's belief that a car would remain in an area for thirty minutes in the middle of the night is not unreasonable, particularly considering the range of callers reporting gunshots already spanned over forty-five minutes. If callers saw the truck and heard gunshots for forty-five minutes, officers could reasonably believe the truck could have continued driving and shooting in the same general area for another thirty minutes.

Defendant also argues that the description of the vehicle—a white Chevrolet Silverado—is insufficiently specific to establish reasonable suspicion. According to Defendant, because one out of every one hundred cars on the road is a white Chevrolet Silverado, it is such a common car that the callers' description was not enough to justify the stop. But again, this argument fails.

Even assuming Defendant's calculations are correct, one out of every hundred cars meaningfully narrows the possible pool of suspects, and we have found reasonable suspicion on similar factual descriptors. See, e.g., Madrid, 713 F.3d at 1254 (upholding reasonable suspicion where emergency caller reported a possible fight and identified the suspects by their clothes and as having a "white, four-door Pontiac"). We need not

8

decide whether this fact alone justifies reasonable suspicion, because we analyze reasonable suspicion based on the totality of the circumstances. Arvizu, 534 U.S. at 273; Daniels, 101 F.4th at 784 ("This Court will analyze each fact, and it will then consider *all the facts together* to determine whether the totality of the circumstances supports a finding of reasonable suspicion . . . ."). The time of night, the fact that the car stopped at the exact address named by one of the callers—a dark business that had closed many hours earlier—and the serious nature of the reported crime all factor into the reasonableness of Officer DeGeorge's suspicion. See Daniels, 101 F.4th at 781.

Taken together, eight corroborating emergency calls, all from the same general geographic area, all reporting gunshots, combined with the time of night and an exact match to the make, model, and color of the vehicle described in the call shows more than mere "inchoate and unparticularized suspicion." Chavez, 660 F.3d at 1221; accord Juvenile T.K., 134 F.3d at 904 (holding officers had reasonable suspicion when told a man had "broken out a window to a vehicle and that he had gotten into a gray vehicle and that he had a gun"); United States v. Burgess, 759 F.3d 708, 709 (7th Cir. 2014) (holding officers had reasonable suspicion when told "shots were fired from a black car traveling south" on a particular street); United States v. Bold, 19 F.3d 99, 100 (2d Cir. 1994) (holding officers had reasonable suspicion when told about a "four-door gray Cadillac with three black males, one of whom was armed with a gun"). Here Officer DeGeorge

had enough facts to warrant reasonable suspicion.[1]  Thus the district court did not clearly

err when it denied Defendant's motion to suppress evidence based on the initial stop.

B.

Defendant next argues that Officer DeGeorge lacked probable cause to search the

Silverado.  We disagree.

The Fourth Amendment protects persons against "unreasonable searches and

seizures."  U.S. Const. amend. IV.  A police officer may search an automobile without a

warrant only if the officer has probable cause to do so.  United States v. Bradford, 423

F.3d 1149, 1159 (10th Cir. 2005) (quoting Florida v. Meyers, 466 U.S. 380, 381 (1984)).

"Probable cause to search a vehicle is established if, under the totality of the

circumstances, there is a fair probability that the car contains contraband or evidence."

United States v. Saulsberry, 878 F.3d 946, 951 (10th Cir. 2017) (quoting Bradford, 423

F.3d at 1159).  Once an officer concludes he has probable cause, he is "empowered to

search the entire vehicle, including the trunk and all containers therein that might contain

contraband."  Id. (quoting United States v. Chavez, 534 F.3d 1338, 1345 (10th Cir.

2008)).

Longstanding precedent demonstrates the sort of factual scenarios that support

probable cause to search a vehicle.  See, e.g., Maryland v. Dyson, 527 U.S. 465, 465–66

---

[1] Officer DeGeorge initiated the traffic stop after he noticed the Silverado's improperly lit license-plate.  The parties dispute this fact, and dashcam footage appears to belie Officer DeGeorge's claim.  But we need not decide this issue, because even without the license-plate light, Officer DeGeorge had enough specific and articulable facts to initiate a traffic stop under Terry.

(1999) (upholding probable cause when officers received a tip claiming a "rented red Toyota, license number DDY 787," was driving from New York carrying drugs); Michigan v. United States, 458 U.S. 259, 259–60 (1982) (upholding probable cause where officers saw an open bottle of liquor in the car); United States v. Burgess, 576 F.3d 1078, 1082 (10th Cir. 2009) (upholding probable cause where a drug dog alerted to the presence of drugs in the car); United States v. Downs, 151 F.3d 1301, 1303 (10th Cir. 1998) (upholding probable cause where officers smelled marijuana in the car).

Here, the bevy of emergency calls describing gun shots and identifying a vehicle of the same make, model, and color, together with the occupants admitting to prior gun-related felonies, their highly nervous behavior and noncommittal answers, and Officer DeGeorge's observance of two gun-holsters, are enough to establish probable cause to search the truck. The district court did not err in concluding that Officer DeGeorge had probable cause to search the Silverado, and therefore did not err when it declined to suppress the seized evidence.

## C.

Defendant also challenges the evidence seized from his pat-down, arguing Officer DeGeorge lacked reasonable suspicion and exceeded the scope of Terry. Again, we disagree.

## 1.

The Supreme Court's decision in Terry governs whether a search during an investigative detention is reasonable under the Fourth Amendment. Under Terry, "[o]nce a vehicle has been lawfully detained pursuant to a valid traffic stop, the officers may

order the driver and passengers out of the car without violating the Fourth Amendment." United States v. Hammond, 890 F.3d 901, 905 (10th Cir. 2018) (quoting Arizona v. Johnson, 555 U.S. 323, 331 (2009)). Officers may then perform pat-downs of drivers and passengers "upon reasonable suspicion that they may be armed and dangerous." Id. (quoting Knowles v. Iowa, 525 U.S. 113, 117–18 (1998)). Reasonable suspicion, as noted above, requires merely "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." United States v. Albert, 579 F.3d 1188, 1193 (10th Cir. 2009) (quoting Terry, 392 U.S. at 21). We evaluate the totality of the circumstances when determining reasonable suspicion. Daniels, 101 F.4th at 784.

Here, the same facts that justified the search of the automobile also justify Officer DeGeorge's search of Defendant. The emergency calls reporting gunshots, matching vehicle, occupants' admission to felony gun-charges, "squirrely" behavior, and the gun holster on the seat, all establish reasonable probability that the suspects possessed guns or other contraband. Along with those facts, Rosenberg wore an empty gun holster on his hip, and when asked if he had anything officers "should be aware of," Defendant said he "had a pocketknife in his left front pocket."

These specific and articulable facts gave Officer DeGeorge reasonable suspicion to frisk Defendant.

2.

Defendant also argues Officer DeGeorge's search exceeded his scope of authority to frisk under Terry when he reached into Defendant's pocket and pulled out the items he felt inside.[2]

While holding a suspect in a "valid investigative detention," officers may conduct a "limited protective search [] if the officer harbors an articulable and reasonable suspicion that the person is armed and dangerous." Hammond, 890 F.3d at 905 (quoting United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996)). Officers may conduct limited pat-down searches of a suspect's outer clothing to "discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29.

Here, parties dispute if Officer DeGeorge patted down Defendant's pocket before reaching inside to pull out the items. But regardless, Officer DeGeorge had reasonable suspicion to reach inside.

Once a suspect tells an officer he possesses a weapon, the officer is not restricted to a mere pat-down. The rationale for Terry frisks is to ensure officer safety, because these sorts of "close range" searches leave officers "particularly vulnerable." Long, 463

---

[2] Defendant also argues on appeal that the officers' use of handcuffs on him was an illegal arrest. But he raises this argument for the first time on appeal. We generally decline to hear arguments not raised before the district court. United States v. Leffler, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When a party fails to raise an argument below, we typically treat the argument as forfeited.") (citing Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011)). If we do consider arguments raised for the first time on appeal, we do so under a "rigorous plain-error test." Id. (citing United States v. Kearn, 863 F.3d 1299, 1305 (10th Cir. 2017)). Because Defendant forfeited his handcuffs argument below and failed to argue for plain error on appeal, we decline to hear it now.

U.S. at 1052.  When an officer has an "objective basis to believe that the person being lawfully detained is armed and dangerous," the "government['s] interest in the safety of police officers outweighs the individual's Fourth Amendment interest."  United States v. King, 990 F.2d 1552, 1561 (10th Cir. 1993) (citing Long, 463 U.S. at 1051).  Here Defendant told Officer DeGeorge he had a pocketknife, and in which pocket it could be found.  Such a situation justifies an officer reaching into Defendant's pocket to pull out the weapon expressly identified by the suspect.  See id. (permitting officer to separate a suspect from a pistol); Adams v. Williams, 407 U.S. 143, 146 (1972) (permitting limited search of lawfully detained person's outer clothing and seizure of any weapon found based on reasonable suspicion that person is armed).

Additionally, Officer DeGeorge's removal of the items from Defendant's pockets did not exceed Terry's bounds, even if he could not tell if he felt a knife.  After all, "[t]he Fourth Amendment is not a game of blind man's bluff.  It doesn't require an officer to risk his safety or the safety of those nearby while he fishes around in a suspect's pockets until he can correctly guess the identity of and risks associated with an unknown object." United States v. Rochin, 662 F.3d 1272, 1275 (10th Cir. 2011).  We also generally strive to avoid "unrealistic second-guessing of police officers' decisions" regarding officer safety, and are "guided by common sense and ordinary human experience" when determining "whether the scope of police conduct was reasonably related to the goals of the stop."  Albert, 579 F.3d at 1193 (quoting United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994)).  Because officers "should not be required to take unnecessary risks," the Fourth Amendment authorizes them to take "reasonably

14

necessary" steps to "protect their personal safety and to maintain the status quo during the course of [a Terry] stop." Id. (quoting United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993)).

Even though the search yielded drug paraphernalia instead of a knife, the search did not violate the Fourth Amendment. When a legitimate search uncovers "contraband other than weapons," an officer cannot simply "ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." Long, 463 U.S. at 1050. The district court ultimately did not err in declining to suppress evidence gained through Officer DeGeorge's frisk of Defendant.

## D.

Defendant argues the officers' based their search of his cellphone on illegally obtained evidence that the district court should have suppressed. Because we have already addressed Defendant's jurisdictional argument against the warrant's validity and his argument that Officer DeGeorge obtained evidence through an illegal Terry frisk, his only remaining argument is that officers misled the state judge into issuing the search warrant. Defendant bases his argument on Franks v. Delaware, which holds an officer's affidavit containing a material, reckless, false statement or omission violates the Fourth Amendment. 438 U.S. 154, 155–56 (1978).

But Defendant did not raise this argument below and admits as much in his reply brief. His general theory of mischaracterized evidence is not enough to preserve his Franks claim, and he cannot show good cause why we should consider it now. Because Defendant forfeited this argument at the trial court and did not argue for plain error on

15

appeal, we decline to hear it.  Leffler, 942 F.3d at 1196.  The district court never had a chance to rule on the matter, and thus did not clearly err in failing to suppress evidence obtained from the search warrant executed on Defendant's phone.

IV.

Lastly, Defendant argues the district court erred in applying the dangerous-weapon enhancement under Sentencing Guideline § 2D1.1(b)(1).

"When evaluating the district court's interpretation and application of the Sentencing Guidelines, we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts."  United States v. Portillo-Uranga, 28 F.4th 168, 178 (10th Cir. 2022) (quoting United States v. Mollner, 643 F.3d 713, 714 (10th Cir. 2011)).  Once the government proves by a preponderance of evidence "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and defendant," the burden shifts to the defendant to show "that it is clearly improbable the weapon was connected with the offense."  Id. (quoting United States v. Pompey, 264 F.3d 1176, 1180–81 (10th Cir. 2001)).  "A two-level sentencing enhancement 'should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'"  Id. (quoting U.S.S.G. § 2D1.1 app. cmt. n.11(A)).

Defendant's physical proximity to the guns and gun holsters, his possession of drugs, scales, and paraphernalia, the fact that he had been driving the Silverado shortly before the stop, and Rosenberg's own testimony all establish that Defendant knew of the guns in the truck.  Once the government proved these facts, the burden

16

lay on Defendant to show it improbable that he possessed them.  He cannot.  He merely argues the government could not tie him to the guns, but this overlooks the standard set by U.S.S.G. § 2D1.1(b)(1), which requires only physical presence.  See, e.g., United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1187 (10th Cir. 2004) ("Possession in the context of § 2D1.1(b)(1) is therefore possession by proximity—constructive possession."); Portillo-Uranga, 28 F.4th at 179 (affirming the district court's sentencing enhancement because, "[t]he district court found that because the firearms were near Portillo-Uranga's cash, cell phones, and fictitious identification documents, as well as a possible drug ledger and fuel tank used for drug trafficking, there was sufficient evidence that the firearms were possessed in connection with drug trafficking"); Pompey, 264 F.3d at 1180–81 (holding the government satisfies its burden by showing "mere proximity to the offense") (quoting United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999)).

The district court did not err in finding for sentencing purposes that Defendant possessed a gun.

Ultimately, officers acted on specific and articulable facts establishing probable cause to search the vehicle, its driver, and Defendant.  Officer DeGeorge acted reasonably when he emptied Defendant's pocket, because Defendant expressly told him it held a knife.  Defendant forfeited any arguments about the officer's search of his phone.  Because the officers acted reasonably, they did not exceed the scope of Terry, and thus did not violate the Fourth Amendment.

17

AFFIRMED.

Entered for the Court


Joel M. Carson III
Circuit Judge